FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

11 MAY 26 PM 1:04

CLERK U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

AMADOU WANE,

Plaintiff

v.

SUNTRUST MORTGAGE, INC.,

JOHNSON & FREEDMAN, LLC,

MORTGAGE ELECTRONIC
REGISTRATION SYSTEM INC,
(nominee of SunTrust Mortgage),

Defendants

CIVIL ACTION

FILE NO: *8: 11-CV-1169-T-30 AEP*

JURY TRIAL DEMANDED

---

**VERIFIED COMPLAINT TO SET ASIDE AN UNLAWFUL FORECLOSURE,
AND FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES**

COMES NOW, Plaintiff Amadou Wane, proceeding *I propria persona*,

files this *Verified Complaint to Set Aside an Unlawful Foreclosure, and for*

*Declaratory Relief, Injunctive Relief, and for Damages.*

I.          THE PARTIES

1. Plaintiff, Amadou Wane, at all times relevant, has resided at 14614 Canopy Drive in Tampa Florida 33626, and been the legal owner of the subject property located at 821 Crestwell Circle #150, Atlanta, , Georgia, 30331, in Fulton County.

2. Defendant **SunTrust Mortgage, Inc**. ("STM"),   is a foreign, for-profit corporation with it's principal place of business located at:   901 Semmes Ave., Richmond, VA  23224; they can be served with process through their **Registered Agent: Corporation Service Company, located at:   1201 Hays Street, Tallahassee, FL  32301.**

3. Defendant **Mortgage Electronic Registration Systems, Inc**, ("MERS") is an electronic registration systems corporation formed under the laws of Delaware, their principal place of business is:   1818 Library St., Suite 300 in Reston, VA 20190.  They can be served through their Registered Agent:   **C T Corporation System, 1200 South Pine Island Road, Plantation, FL  33324.**

4. Defendant **Johnson & Freedman, LLC**. ("J&F"), is a foreign Limited Liability Company, with its principal place of business located at:  1587 Northeast Expressway, Atlanta, GA  30329.  They can be served with process through their Registered Agent:  **C T Corporation System**, located at:  **1200 South Pine Island Road, Plantation, FL  33324.**

  II.       <u>JURISDICTION</u>

5. This is a diversity action with the parties being individuals living in different states, and Plaintiff's claims are as such the Federal Courts have original jurisdiction.

6. This Court has jurisdiction because the matter consists of parties that are citizens of different states - diversity of citizenship 28 U.S.C. §1332(a)(1); and the amount in controversy exceeds the sum or value of Seventy-five Thousand Dollars ($75,000.00) - §1332(a)

7. This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 (general federal question), 1337 (interstate commerce), because this is a civil action arising under the laws of the United States, and principles of supplemental jurisdiction in accordance with 28 U.S.C. §1367.

8. Venue is proper because Plaintiff is a resident of the state of Florida, and transactions were with businesses that are licensed to practice in the state of Florida, many of the unlawful acts have been conveyed through the mail, and over telecommunications constituting mail fraud and wire fraud.

9. Plaintiff has found no Forum Selection Clause within the Warranty Deed, Security Instrument, or any other documents that he signed at closing.

III.         BRIEF BACKGROUND

10. Plaintiff executed two Security Deeds for the property at 821 Crestwell Circle #150, Atlanta, Georgia, 30331 ("Crestwell property", or "the property"), on or

around April 20, 2006, allegedly, in favor of SunTrust Mortgage.

11. The Crestwell property Deeds, duly recorded in the Official Record of **Fulton County** in **Deed Book 44569, Page 256** and **Book 45589, Page 282**

12. In response to Plaintiff's **November 22, 2009** *Qualified Written Request* ("QWR"), Plaintiff received a letter from STM dated **December 16, 2009**, in which STM denied their obligation to supply most of the requested documentation, and in which they alleged Goldman Sacs SEC Wells Fargo ("GS/ WF") as holder of the security deed and note. *"Exhibit 1"*

13. **March 15, 2010**, Plaintiff sent *Notice of Rescission* to Goldman Sachs (GS/ WF), via Certified Mail/Return Receipt. *"Exhibit 2"*

14. **March 15, 2010** Plaintiff had *Notice of Rescission* sent to STM, via Certified Mail/Return Receipt, *"Exhibit 3"*

15. **Mid November, 2010**, Plaintiff received a letter from STM dated **October 30, 2010**, alleging default.

16. **Nov. 26, 2010**, Plaintiff received J&F's Notice of Foreclosure Sale dated **November 22, 2010**.

17. **November 29, 2010**, Plaintiff sent, via certified mail, another QWR to STM,. *"Exhibit 4"*

18. **November 29, 2010**, Plaintiff sent J&F a *Debt Validation request*, via certified mail. *"Exhibit 5"*

19. A Sale Under power was scheduled for **January 04, 2011** *"Exhibit 6"*, Plaintiff has confirmed that at that time, STM did not perform the unlawful sale under power.

20. There was no more communication from any of the defendants until **March 23, 2011**, attached as *"Exhibit 7"*

21. Notice of Sale mailed to Plaintiff March 29, 2011 *"Exhibit 8"*

22. **April 22, 2011** SunTrust responded to another letter that Plaintiff had sent disputing the validity of the Note and Security Instrument, in which SunTrust enclosed the alleged Note *"Exhibit 9"*

23. To Plaintiff's information and belief, SunTrust pursued and successfully conducted a Sale Under Power **May 03, 2011**, despite the disagreement of the validity of SunTrust's documents.

IV.         NATURE OF THE CASE

24. Plaintiff incorporates paragraphs 9 through 22 for reference.

25. This action is brought to seek redress for defendants' *crimen falsi,* which encompasses the falsification/enhancement/inflation of the appraisal (appraisal fraud) of Plaintiff's property, at the behest and direction of the lender, prior to closing on the loan.

26. All parties (other than Plaintiff) at the "closing", had actual knowledge of the appraisal fraud, and knowingly, willingly, wantonly, and with malicious intent, withheld the vital information, so that Plaintiff would rely upon the appraisal.

27. The real lender and their contact information were intentionally, knowingly, willingly, and wantonly withheld at the loan closing so that Plaintiff was unaware that the "loan closing" was part of an elaborate scheme to issue a negotiable instrument, which would be issued by the borrower (through trickery/deception), and later converted to other uses and terms.

28. This action is also brought due to far reaching fraudulent schemes to perpetuate, for improper use, Plaintiff's identity, several forms of fraud, breaches of contractual and fiduciary obligations, and usury.

29. Plaintiff is merely a nominal payor on the subject promissory Note; SunTrust Mortgage, shown as lender, when in fact the source of loan funds and the actual lender (Investors in Certificates) and underwriter (Mortgage Aggregator and Investment Banker) were other, third parties, whose identities and receipt of fees and profits, at the "closing", and ever since, have continually been withheld from Plaintiff, despite repeated requests for the truth.

30. SunTrust Mortgage, (STM) induced Plaintiff into a transaction that did not then, and can never, meet normal underwriting standards for residential mortgages;

STM posed as a conventional mortgage lender, leading Plaintiff to believe that STM had an interest in the success (repayment).

31. Further, neither STM, nor Mortgage Electronic Registration Systwems, Inc (MERS), has ever had a financial stake (liability/interest) in the transaction, other than Plaintiff's signature on a "loan" that   both STM and MERS had actual knowledge, would never be repaid, contrary to assurances from conspiring participants in this fraudulent scheme.

32. STM's sole purpose was to collect fees, rebates, kickbacks, and profits that were never disclosed to, and only recently discovered by Plaintiff through consultation with experts in securitization of residential mortgage loans, many hours of research, including filings with Securities and Exchange Commission.

33. Notwithstanding the stated paragraphs above, and without the knowledge of Plaintiff, STM had entered into Agreements with one or more parties, including, but not limited to the Loan Seller prior to or contemporaneously with the "Closing" of the subject "loan transaction".

34. Plaintiff has neither been made aware of what version of documentation was presented to the Loan Seller, nor whether the Loan Seller took one or more varying descriptions of the alleged loan documents into more than one pool of assets, which was eventually sold for the purpose of securitizing the assets of the pool which included the subject loan transaction either once or more than once.

35. Plaintiff has requested such information, only to be denied, or met with complete silence and defiance or obfuscation from defendants. (see *"Exhibit 1"- Response to QWR)*,

36. The note from the subject loan was eventually allocated into a new corporation a/k/a Special Purpose Vehicle, formed especially for holding pooled assets under certain terms, which included allocation of payments from one note to pay deficiencies of another note in unrelated loan transactions contrary to the terms of such note which required payments to be allocated to the principal, interest, escrow and fees associated with only that specific loan transaction.

37. Pool assets, which include Plaintiff's subject loan transaction, were pledged completely to the owners of the "asset-backed securities".

38. All certificates were transferred to a Depositor, who in turn sold the Certificates in varying denominations, each with slightly different terms depending upon the segment of the pool (tranche) secured the investment.

## COUNT ONE VIOLATIONS OF FEDERAL CONSUMER PROTECTION STATUTES
### (Against All Defendants)

39. Defendants have continually refused to reveal the true source of the funds for the alleged loan transaction, which further prevented Plaintiff from exercising his right of three day rescission under the Truth in Lending Act, because the true lender has never been revealed, and lack of an authorized addressee.

8

40. Plaintiff *alleges* that there was a "loan closing", due to the fact that it was part of an undisclosed, secreted, illegal scheme to issue unregulated securities (mortgage-backed securities) based upon the negotiation of non-negotiable notes, the terms of which had been changed, altered, amended of modified *after* the execution by Plaintiff.

41. By adding terms which allowed the proceeds of the note to be allocated to the payment of the notes of other borrowers, and by adding co-obligors through insurance, guarantees, additional collateralization and reserves, all of which were undisclosed, defendants purported to "negotiate" the note.

42. The note was non-negotiable, as there was no longer an unconditional promise to pay by the original borrower; the terms changed, adding conditions to payment that were inherent in the "securitization process" that defendants fraudulently promoted.

43. The false and misleading representations and material omissions of defendants as to the true nature of the mortgage loan actually being processed, of which defendants had actual knowledge, were in direct conflict with the Uniform Residential Loan Application, early TILA, and Plaintiff's stated intentions and directions to defendants; this resulted in Plaintiff executing a predatory loan document.

44. Neither Plaintiff, nor any of the investors in the certificates of mortgage-

backed securities were ever advised that:

(a)   The mortgage loan being processed was not in his best interest;

(b)   Terms of the mortgage loan were less favorable than the fixed-rate loan Plaintiff previously had been qualified for;

(c)   The mortgage loan was an inter-temporal transaction (where the terms, risks, provisions at the commencement are different at a later time) that Plaintiff was providing cover for defendant's illegal acts;

(d)   Plaintiff would likely be placed in default, the loan foreclosed, and a deficiency judgment be brought against him, whether or not he met the loan obligations, once the true lender/holder in due course appeared;

(e)   Plaintiff's loan had been pre-sold, prior to closing, that MERS would be involved, or that a third party had previously executed documentation (Assumption and Assignment Agreement, Pool Services Agreement, etc.);

(f)   The mortgage loan was actually intended to be repeatedly sold and assigned to multiple third parties, for the sole purpose of bundling the mortgage with hundreds or perhaps thousands of others as part of a companion, support or other tranche in connection with the creation of a REMIC security known as a Collateralized Mortgage Obligation (CMO, a/k/a mortgage-backed security) to be sold by securities firms;

(g)   The mortgage instrument and promissory note may be sold, transferred, assigned separately and to separate third parties so that the latter "holder of the note" may not have the legal right to foreclose if there were a default.

(h)   That the assignees or purchasers of Plaintiff's note may make "pay-downs" against the note which may effect the true amount owed by Plaintiff.

10

(i)   Successive assignee/purchasers may not upon assignment or purchase, unilaterally impose property insurance requirements different from those imposed as a condition of the original loan without Plaintiff's prior notice and consent.

45. The results of closing in connection therewith, defendants placed Plaintiff into a pool of sub-prime adjustable rate mortgage programs, which were not in Plaintiff's best interest.

46. Defendants knowingly, willingly, wantonly, and with total disregard of Plaintiff or his Rights, failed to inform Plaintiff that the nature of his mortgage application had been materially altered, placed into a pool where the usual loan was an adjustable rate mortgage despite the fact that Plaintiff was not qualified for such.

47. Prior to closing, STM failed to provide Plaintiff with the preliminary disclosures as required by Truth-In-Lending Act (TILA), pursuant to 12 CFR a/k/a "Regulation Z" §226.17 and 18.

48. Defendant STM also knowingly, willingly, wantonly and fraudulently refused to provide necessary disclosures which would indicate that the consumer credit contract was void, illegal and predatory. Defendants failed to provide proper disclosures of the actual contractually due amounts and rates pursuant to the legal terms of the note.

49. Plaintiff was not provided with a HUD-I Settlement Statement at the closing reflecting the true costs of the consumer credit transaction, nor was he provided an accurate GFE or Itemization of Amount Financed (IOAF); there was no disclosed Yield Spread Premium (YSP), thus no disclosure of the true cost of the loan.

50. A direct and proximate result of defendants failures to disclose as required by TILA, STM received substantial YSP without preliminary disclosure, a per se violation of 12 CFR §§226.4(a), 226.17 and 18(d) and (c)(1)(iii); the YSP raised the interest rate, unknown, unapproved by Plaintiff, as he had not received the required GFE or IOAF.

51. Further, because the YSP had never been disclosed in the broker contract, Plaintiff was led to believe it would be disclosed at the closing, which it was not, no disclosure was ever made; this is an illegal kickback in violation of 12 USC §2607 as well as State law which gives rise to all damages claims for all combined broker fees, costs and attorneys' fees.

52. Moreover, STM failed to disclose that Plaintiff's loan had already been sold and pursuant to the Pooling and Servicing Agreement, private mortgage insurance (PMI) was required for every mortgage loan in the pool.

53. PMI is a finance charge and *must[1]* be included in the calculation of the finance charges and the annual percentage rate for the loan. *Off'l Staff Comm. To Reg. Z. 12 C.F.R.Pt. 226, upp. I at ¶4(a)(1)*.

54. The amount financed within the TILA is also understated, a material violation of 12 CFR §§226.17, 226.18, in addition to 15 USC §1602(u), as the amount financed *must be* accurate with no tolerances.

55. Added to the fact that Plaintiff did not properly receive Notice of Right to Cancel, constitutes violations of 15 USC §§1635(a) and (b), as well as 12 CFR §226.23(b), and thus a legal basis for legally extending Plaintiff's right to exercise the remedy of rescission.

56. The note and mortgage was assigned to third parties, who did not act in good faith, without notice that the instruments were invalid, and/or that Plaintiff had a claim in recoupment.

57.Pursuant to 3 UCC §302(a)(2)(ii), (iii), (v), and (vi), defendants are not holders

---

[1] Whenever in a rule, or statute, there has been used, an "unmistakably mandatory character", it is required that certain procedures "shall," "will," or "must" be employed; the court has no discretion to act in a different manner, and often the mandatory character creates a liberty interest. *Hewitt v Helms,* 459 US 460 - Supreme Court 1983 @ 871; see also *Russ v. Young,* 895 F.2d 1149, 1153 (7th Cir. 1990), See also *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).; "use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest." *Verrett v. Stempson,* 623 A. 2d 120 - DC: Court of Appeals 1993

in due course and are thus liable to Plaintiff individually, jointly and severally.

58. Defendants engaged in a pattern and practice of defrauding Plaintiff during the life of the mortgage loan, failed to properly credit payments, incorrectly calculated interest, failed to accurately debit fees.

59. Defendants, had actual knowledge that Plaintiff's accounts were not accurate, but gambled that Plaintiff would continue paying.

60. Payments made, were based upon the improper, inaccurate, and fraudulent representations made as to Plaintiff's accounts.

61. As a direct and proximate cause of the defendants' actions, and/or inactions, Plaintiff was overcharged, and has thereby overpaid interest.

62. Defendants knowingly, willingly, wantonly, in total disregard for Plaintiff, and his Rights, utilized inaccurate figures to determine the amount due for purposes of foreclosure.

63. In addition to seeking compensatory, consequential, and other damages, Plaintiff seeks declaratory relief as to whether or not any other party, entity, individual or group is the owner of the promissory note executed at closing, and whether or not the Mortgage secures any obligation of the Plaintiff.

64. Plaintiff at closing, was presented with a Notice of Right to Cancel that was incorrect, confusing and defective, as a result, Plaintiff has an extended Right to Cancel.

65. TILA failed to disclose the actual contractually due amounts pursuant to the terms of the Note.

66. HUD-I Settlement Statement failed to disclose the true cost of the consumer transaction because it failed to provide an accurate Good Faith Estimate (GFE), or Itemization of Amount Financed (IOAF); there was no disclosure of Yield Spread Premium (YSP), all of which are required by TILA.

67. On or around March 15, 2010, Plaintiff, who has a continuing right to rescind the loan, due to the defective notice of right to cancel, and lack of the required advanced disclosures, sent *Notice of Rescission* to GS (creditor)[Exhibit 2], and STM (servicer)[Exhibit 3].

68. Plaintiff never received a response from either party, and no steps were taken to release the security interest on Plaintiff's property.

69. A court may award damages in addition to rescission. (15 U.S.C. §1640)

70. Failure to respond to the notice of rescission is a separate violation of 15 U.S.C. §1640(a) entitling Plaintiff to statutory damages.

71. Plaintiff is entitled to rescind his mortgage transaction against the assignee. (15U.S.C. §1641(c))

72. "When an obligor exercises his right to rescind under subsection (a)...any security interest given by the obligor...becomes void upon such a rescission." (15 U.S.C. §1635(b)):

## V. COUNT TWO VIOLATIONS RIGHT TO RESCIND
### (Against SunTrust)

73. In very simple terms and black letter law, **only** "*A Secured Creditor*" has a right to conduct a non-judicial foreclosure sale in the state of Georgia. None of these defendants are "*a secured creditor*".

74. For the Notice of Default and Notice of Sale Under Power to be valid, Plaintiff must be supplied with the name and address of the "*secured creditor*", and the entity that has **full, not limited** pre-granted authority, to 1) *negotiate*, 2) *amend*, 3) *or modify the terms*.

75. This includes things in the mortgage instrument including, but not limited to assumption agreements, transfers, notices, clauses etc...

76. In Georgia, there is an assignment before foreclosure proceedings begins. There is no assignment in the records at all.

## COUNT THREE TRUTH IN LENDING
### (Against SunTrust Mortgage or Undisclosed Lender)

77. Because Notice of Right to Cancel was defective, and the required material disclosures were not provided, Plaintiff had a continuing right of rescission.

78. 15 U.S.C. §1635(a) requires only a notice to "the creditor in order to rescind" a transaction.

79. 15 U.S.C. §1602(f) defines the creditor as "the person to whom the debt arising

from the consumer credit transaction is initially payable on the face of the evidence of indebtedness". That entity is SunTrust Mortgage.

80. Once the obligor has exercised his right to rescission, the "creditor" has 20 days after receipt of the notice of rescission to return to the obligor any money or property given as earnest money, down-payment, or otherwise and is required to take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.

### 15 U.S.C. §1635(b)
**(b) Return of money or property following rescission.**
When an obligor exercises his right to rescind under subsection (a)..., he is not liable for any finance or other charge, and any security...interest arising by operation of law, becomes void upon such a rescission. Within 20 days,...the creditor *shall*[2] return... any money or property given as earnest money, down-payment, or otherwise, and *shall* take any action...to reflect the termination ... If the creditor has delivered any property...the obligor may retain possession...Upon the performance ...the obligor *shall* tender the property to the creditor, except that if return of the property...

---

[2] Whenever in a rule, or statute, there has been used, an "unmistakably mandatory character", it is required that certain procedures "**shall**," "**will**," or "**must**" **be employed**; the court has no discretion to act in a different manner, and often the mandatory character creates a liberty interest. *Hewitt v Helms,* 459 US 460 - Supreme Court 1983 @ 871; see also *Russ v. Young,* 895 F.2d 1149, 1153 (7th Cir.1990), See also *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).; "use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest." *Verrett v. Stempson,* 623 A. 2d 120 - DC: Court of Appeals 1993

17

would be impracticable or inequitable, the obligor *shall* tender its reasonable value.  Tender *shall* be made at... the property or at the residence of the obligor,... If the creditor does not take possession... within 20 days... , ownership of the property vests in the obligor without obligation... The procedures...shall apply except when otherwise ordered by a court.

81. Although Plaintiff received evidence that defendants had in fact received *Notice of Rescission*, *"Exhibit 10"*, defendants ignored, and  have continued to ignore the document, without explanation.

82. STM and GS both received Notice of Rescission, neither STM nor GS, returned Plaintiff's monies, "took any action necessary... to reflect the termination... ," in violation of 15 U.S.C. §1635(a).

83.15 U.S.C. §1635(g) provides that a court may award damages under 15 U.S.C. §1640 in addition to rescission for a separate violation.

> 15 U.S.C. §1640:
>
> Except as otherwise provided... , any creditor who fails to comply with any requirement... , or part D or E of this subchapter with respect to any person is libable to such person in an amount equal to the sum of:
> (1) Any actual damage sustained by such person as a result of the failure;
> (2) (A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction

84. Defendants failed to take possession within the 20 days of service after tender by the obligor, ownership of the property vests the obligor... "

85. There is an obvious violation on the face of the TILA, "the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note or any other disclosure of disbursement (15 U.S.C. §1641(e)(2)(A)", Plaintiff is entitled to assert the right to rescind against any assignee of the loan.[3]

## COUNT FOUR VIOLATIONS OF GEORGIA FORECLOSURE LAWS

86. The Georgia Court of Appeals has repeatedly held that the "right of the humblest individual in the enjoyment of his property must be protected."[4]

87. An individual's property right is of such paramount importance that the Georgia Constitution is dedicated to the protection of private property.

88. No fewer than eleven (11) separate paragraphs of the Georgia Constitution [5] expressly address individual property rights.

89. Particularly, the Georgia Constitution emphasizes that protection of property is "the paramount duty of government[,]".[6]

90. So important are property rights that the Georgia Legislature has codified

---

[3] 15 U.S.C. §1641(e)

[4] *Williams v. LaGrange*, 213 Ga. 241 (1957); *Ammons v. Central of Georgia Railway Co.*, 215 Ga. 758 (1960).

[5] See, e.g., Georgia Constitution, Art. I, § I, I, II, IV, XXVI, and XXVII; Art. III, § III, I; Art. VII, § I, II and III; Art. VII, § II, II and IV; and Art. IX, § VII, III.

[6] Georgia Constitution, II

property-related torts, thereby providing statutory causes of action for any interference with an individual's property rights.[7]

**A.    _Supreme Court of Georgia's March 25, 2011 Ruling_**

91. Defendants in this case at bar, failed to adhere to strict Georgia statute concerning the recording of real property into the County/State Records, and "constructive notice to subsequent bona fide purchasers".

92. March 25, 2011 the Supreme Court of Georgia Ruled in a Certification requested by Federal Court, "**_Exhibit 11_**" "that the 1995 Amendment is applicable to security deeds"; "See O.C.G.A. §44-2-14 ('Before any deed to realty or personalty or any mortgage, bond for title, or other recordable instrument executed in this state may be recorded, it must be attested or acknowledged as provided by law')."

93. The documents Defendants have repeatedly used concerning Plaintiff's real property and the recordation of same, show the documents recorded were not properly attested to, therefore did not provide notice to potential buyers, in

---

[7] OCGA §§ 51-9-1: "[t]he right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie."; 51-9-2, 51-9-3: ("The bare possession of land shall authorize the possessor to recover damages from any person who wrongfully interferes with such possession in any manner", and 51-9-10.

violation of O.C.G.A. §§ 44-14-61, 44-14-33. [8]

94. O.C.G.A. §44-14-61 provides that "[i]n order to admit deeds to secure debt...

to record, they shall be attested or proved in the manner prescribed by law for

mortgages."

95. O.C.G.A. §44-14-33 provides the law for attesting mortgages:

> "In order to admit a mortgage to record, it must be attested by or
> acknowledged before an officer as prescribed for the attestation or
> acknowledgment of deeds of bargain and sale; and, in the case of
> real property, a mortgage must also be attested or acknowledged
> by one additional witness.  In the absence of fraud, if a mortgage
> is duly filed, recorded, and indexed on the appropriate county
> land records, such recordation shall be deemed constructive notice
> to subsequent bona fide purchasers."

### B.   *Georgia Land Registration Laws*

96. It is apparent from the long, exhausting misadventure that Defendants have

caused Plaintiff to endure, that they have knowingly, willingly, wantonly,

fraudulently, and maliciously attempted to gain Plaintiff's property or an interest

in Plaintiff's property, and filed fraudulent documents to aid themselves in gaining

---

[8] To set the matter straight, and prevent any future arguments, the US District Court,
Certified the question to the Georgia Supreme Court, who Ruled March 25, 2011 No.:
S10Q1564 in *US Bank National Association v. Gordon*.  The question was whether the
1995 Amendment "means that, in the absence of fraud, a security deed that is actually
filed and recorded, and accurately indexed, on the appropriate county land records
provides constructive notice to subsequent bona fide purchasers, where the security deed
contains the grantor's signature but lacks an official and unofficial attestation (i.e., lacks
attestation by a notary public and also an unofficial witness)."   They answered "the
certified question in the negative."

an interest in, or in the whole of Plaintiff's property, by forgery, fraud and general illegal means.

97.O.C.G.A. §44-2-40 The Land Registration Law:

> **Any person who**: (1) fraudulently obtains or attempts to obtain a decree of registration of title to any land or interest therein; (2) knowingly offers in evidence **any forged or fraudulent document** in the course of any proceedings with **regard to registered lands or any interest therein**; (3) makes or utters **any forged instrument of transfer or instrument of mortgage** or any other paper, writing, or document used in connection with any of the proceedings required for the registration of lands or the notation of entries upon the register of titles; (4) steals or fraudulently conceals **any owner's certificate, creditor's certificate, or other certificate of title** provided for under this article; (5) fraudulently alters, changes, or mutilates any **writing, instrument, document, record, registration, or register** provided for under this article; (6) makes any false oath or affidavit with respect to any matter or thing provided for in this article; or (7) makes or knowingly uses any counterfeit of any certificate provided for by this article shall be guilty of a felony and shall be punished by imprisonment for not less than one nor more than ten years.

98. O.C.G.A. §44-2-40 does not exempt bankers, brokers, lenders, assignees, nominees, clerks, or any other person.

99. O.C.G.A. §44-2-40 does not provide that such individual needs to be indicted, arrested, charged, or tried; further, the statute uses the mandatory character "shall", i.e.: "shall be" guilty, and "shall be punished".

100. Under Georgia law, no sale of real estate under Power of Sale, contained in security deeds are valid, unless the sale is advertised and conducted at the time and place and in the usual manner of the Sheriffs' Sales in the county in which such real estate or a part thereof is located, and unless Notice of the sale is given as required by O.C.G.A. §44-14-162.2.

101. Where a foreclosing creditor fails to comply with the notice requirements of section O.C.G.A. §44-14-162.2, the residential debtor may pursue a claim for wrongful foreclosure. *Roylston v. Bank of America, N.A.,* 290 Ga. App. 556, 660 S.E.2d 412, Ga. App. 2008.

102. STM was not the owner of the underling promissory note at the time of the illegal foreclosure sale .

103. The fact that the foreclosing party was not the secured creditor, and did not have a legal interest in the property and thus did not have a valid power to sell the property is a cognizable defense for a wrongful foreclosure claim. *Id*. "A claim for wrongful exercise of power of sale under O.C.G.A. §23-2-114 can arise when the creditor has no legal right to foreclose." *Id*. (reversing trial court ruling that creditor's lack of a legal interest in the foreclosed property barred a wrongful foreclosure claim); see also *Rapps v. PHH US Mtg. corp,* (allowing appellant to maintain wrongful foreclosure claim based on allegations that appellee altered deed so that it could foreclose on property that was never subject to the deed);  the

debtor may seek both cancellation of the foreclosure sale and recovery of damages "not associated with the value of the property for other wrongful conduct by a mortgagor." *Calhoun*, 443 S.E.2d at 838; *Clark,* 395 S.E.2d at 885-86 (explaining that damages "for other breaches of duty and other losses" are allowed in action to cancel foreclosure sale).

104. Where a creditor does not comply with the statutory duty to exercise fairly the power of sale in a deed to secure debt, the debtor may pursue a cause of action for wrongful foreclosure under O.C.G.A. §23-2-114. *DeGloyer v. Green Tree Servicing, LLC*, 662 S.E.2d 141 (Ga. Ct. App. 2008).

<u>COUNT FIVE WRONGFUL FORECLOSURE AS A TORT</u>

105. In Georgia, there exists a statutory duty upon the entity pursuing and causing the Sale Under Power, to exercise fairly and in good faith, the power of sale. Although arising from a contractual right, breach of this duty is a tort, compensable at law. *Clark v West*, 196 Ga. App. 456, 395 S.E.2d 884 (1990).

106. The statutory requirements of O.C.G.A. §44-14-162.2 were violated by defendants, as there was no Notice sent to Plaintiff by the Secured Creditor.

107. STM clearly, is not and was not the secured creditor, holder in due course, of the promissory Note at the time of the foreclosure sale.

108. The documentation provided to show that STM had authority to act as a secured creditor is not legal in Georgia or any other state.

109. Plaintiff has found nothing to show that MERS is in fact authorized to act as a Trustee or fiduciary in the state of Georgia.

110. Plaintiff has seen no credible evidence that suggests that STM had the authority to exercise under power of sale, or act as attorney-in-fact for Plaintiff.

111. The fact that the Security instrument and the Note had been separated causes the loan to become unsecured.

112. There had been a break in the chain of title.

113. The sale was not conducted fairly and in good-faith as required by O.C.G.A. §23-2-114.

114. Together, all the above violations, and lacks of authority, all constitute a tort for wrongful foreclosure.

115. Defendants chose to proceed with non-judicial sale of Plaintiff's property even though they knew or should have known they lacked authority to act as attorney in fact for the Plaintiff and exercise the power of sale.

116. Defendants' actions were willful, wanton and knowingly performed with a complete disregard of Georgia's Codes, Plaintiff's Rights, and the consequences of doing so.

117. Plaintiff is thereby entitled to an award of punitive damages.

118. Defendants' above described actions constitute a tort of wrongful foreclosure under Georgia Law entitling Plaintiff to recover from defendants all damages

caused by their tortuous conduct, including damages for severe emotional distress and punitive damages, as well as attorney's fees.

COUNT SIX
(Equitable Relief)

119. Because of all or any of the reasons identified above, including but not limited to

(1)   No Notice meeting the requirements of O.C.G.A. §44-14-162.2 was provided Plaintiff by the secured creditor;

(2)   the fact that the STM was not a holder in due course of the promissory note as required;

(3)   STM did not meet the qualifications under Georgia Law or custom to exercise the power of sale;

(4)   STM could not legally act as a corporate fiduciary in Georgia as required by

(a)   the operation of the deed, and

(b)   exercise of the power of sale as attorney-in-fact for Plaintiff requires, thereby voiding the Security and Foreclosure Deeds;

(5)   The fact that the Deed and Note had been separated;

(6)   The fact that there is a broken chain of title;

(7)  defendants' failure to exercise fairly the power of sale under O.C.G.A. §23-2-114, entitles Plaintiff to:

120. An Order that declares that the foreclosure actions of either one or all of the defendants, resulted in the wrongful foreclosure with respect to Plaintiff's property and that declares that all deeds under power (i.e. foreclosure deeds) that were prepared as a result of the invalid/wrongful non-judicial sales of Plaintiff's property that were recorded in the land records of Georgia wherein the land lies are VOID and which restores title as it existed just prior to the invalid/wrongful foreclosure sale, thus reversing said sale and returning to Plaintiff his respective position and holding his respective interests in the property as they existed prior to said foreclosure sale.

## COUNT SEVEN
### (Punitive Damages)

121. As a direct and proximate result of defendants' blatant disregard of Plaintiff's Rights as explained in this complaint, Plaintiff should be awarded punitive damages pursuant to O.C.G.A. §51-12-5.1 for such willful misconduct, malice, fraud, and wantonness in amount to be proved at trial

## COUNT EIGHT
### (Attorney's Fees)

122. As Plaintiff is aware that pro se litigants are not eligible to collect attorneys fees, Plaintiff wants to reserve this paragraph so that should Plaintiff in fact locate and retain competent legal counsel to take over the representation in this matter, that said attorney should still be able to have his fees granted to him/her.

123. Defendants, especially STM, has been extremely, stubbornly litigious in this matter, and as such Plaintiff is entitled to recovery of attorney's fees associated with this action.

124. WHEREFORE, Plaintiff respectfully prays that this Court:

As a result of such uniform, wrongful conduct by defendants, the Court must, inter alia:

1) invalidate the foreclosure sale,

2) order as void the Foreclosure Deed (or Deed Under Power); and/or

3) restore equitable or legal title, if possible, as it existed just prior to the foreclosure sale and award compensation for any damages suffered as a result of defendants' actions. Enforces the Plaintiff's Notice of Rescission and accordingly declare the mortgage transaction between Plaintiff and defendants rescinded;

4) Order Defendants to take all action necessary to terminate any security interest in Plaintiff's property created under the transaction and the Court declare all such security interests void;

5) Enjoin defendants during the pendency of this action, and permanently thereafter, from institution, prosecuting, or maintaining foreclosure

proceedings on the Plaintiff's property, from recording any liens, deed or mortgages regarding the property or from otherwise taking any steps to deprive Plaintiff of ownership of that property;

6) Award Plaintiff both statutory and enhanced damages for failure to rescind;

7) Award Plaintiff costs; and

8) Award such other and further relief as the Court deems just and fair.


Respectfully submitted, this 26 day of May, 2011


By: _____

AMADOU WANE, Pro Se
13046 Race Track Rd., #118
Tampa Florida 33626
(813) 343-0438
amadou@amadouwane.com

## VERIFICATION

I, Amadou Wane, proceeding in pro se, and under penalty of perjury state the following:   I am over the age of 21 and competent to testify in all matters concerning the above stated; I have prepared and read the foregoing Complaint, which comes from my first-hand knowledge.  All of the Exhibits are true correct, unaltered copies of the originals that I have, that have been provided to me by the defendants, or which I obtained from State websites.  Everything I have stated is true to the best of my knowledge and belief.

Amadou Wane

STATE OF FLORIDA

COUNTY OF HILLSBOROUGH

Sworn to and Subscribed Before Me

This 26th day of May, 2011

NOTARY PUBLIC, State of Florida

ROBERT ARTHUR RULLY
Comm# DD0851111
Expires 1/19/2013
Florida Notary Assn. Inc

30