## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

AMADOU WANE,     )
           )
  Plaintiff,     )
           )  CIVIL ACTION FILE
  vs.        )
           )  NO. 8:11-CV-1169-SDM-AEP
SUNTRUST MORTGAGE, INC.;  )
JOHNSON & FREEDMAN, LLC;  )
and MORTGAGE ELECTRONIC  )
REGISTRATION SYSTEMS, INC.,  )
nominee of SunTrust Mortgage,  )
           )
  Defendants.    )

---

### SUNTRUST MORTGAGE, INC.'S and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

DEFENDANTS, SUNTRUST MORTGAGE, INC. ("SunTrust Mortgage") and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), two (2) of the named Defendants in the above-captioned civil action, by and through their undersigned counsel, preserving all defenses, and respectfully move this honorable Court for an order dismissing the initial pleading filed by Amadou Wane, the Plaintiff herein, entitled "Verified Complaint to Set Aside an Unlawful Foreclosure, and for Declaratory Relief, Injunctive Relief, and Damages" (hereinafter, "Plaintiff's Complaint" or, alternatively, the "Complaint"), pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(3), 28 U.S.C. § 1367(c) and 28 U.S.C. §§ 1391(a) and (b) on grounds, *inter alia*, that Plaintiff's Complaint fails to state a claim or cause of action against either SunTrust Mortgage or MERS upon which relief can be granted, and that Plaintiff's

1

claims are barred by this Court's inherent power to decline supplemental jurisdiction. In the alternative, SunTrust Mortgage and MERS move the Court for an order transferring this case to the United States District Court for the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. § 1406(a). In support of this Motion, SunTrust Mortgage and MERS state as follows.

## PRELIMINARY STATEMENT

The Complaint filed by the Plaintiff in the case at bar is devoid of specific facts on which to base any claim for relief. SunTrust Mortgage and MERS, through counsel, submit the Court should dismiss the instant action on grounds, *inter alia*, (i) that Plaintiff's Complaint fails to state a claim or cause of action against either SunTrust Mortgage or MERS upon which relief can be granted, (ii) that Plaintiff's claims are barred by this Court's inherent power to decline supplemental jurisdiction as provided in 28 U.S.C. § 1367(c), and (iii) for improper venue.

## INTRODUCTION

The instant action arises from the Plaintiff's attempt, more than five (5) years after the subject loan was obtained, to obtain rescission of a purchase money mortgage loan extended to him by SunTrust Mortgage, presumably in an attempt to delay eviction proceedings against the real property which is the subject of the Complaint. Plaintiff also seeks unspecified damages.

Amadou Wane, the Plaintiff herein ("Mr. Wane"), filed his complaint in this forum on May 26, 2011, alleging that SunTrust Mortgage violated, *inter alia*, the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA") and Regulation Z, 12 C.F.R. §§ 226.1 *et seq.* ("Reg. Z"), and, further, that the collective defendants violated various provisions of the Official Code of Georgia

pertaining to the foreclosure of real property, specifically O.C.G.A. §§ 44-14-160 *et seq.* The mortgage loan for the purchase of an investment property located in Georgia about which Mr. Wane, a Florida resident, complains was made by SunTrust Mortgage more than five (5) years ago. Plaintiff's TILA claims are time-barred and, in any event, completely contradicted by the very documents referenced in the Complaint. Moreover, venue does not lie in this district based on the facts alleged on the face of the Complaint. Johnson & Freedman, LLC ("Johnson & Freedman"), also a named defendant herein, is a Georgia limited liability company, the real property at issue is located in Atlanta, Georgia, and all of the events giving rise to the claim(s) asserted in the Complaint occurred in Georgia. In fact, this action's only connection to this district is the Plaintiff's residence here.

Accordingly, SunTrust Mortgage and MERS respectfully submit the Plaintiff's Complaint against these named defendants should be dismissed with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6), as the Complaint fails to state a claim or cause of action against either SunTrust Mortgage or MERS upon which relief can be granted.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Although the underlying facts, record evidence and procedural history in the case at bar are limited, in the interest of judicial economy and the Court's time and resources, SunTrust Mortgage and MERS, respectively and through counsel, respectfully submit the following

relevant facts and procedural history in support of their Motion for this honorable Court's consideration.[1]

Amadou Wane, the Plaintiff herein, acquired an interest in the real property more commonly known as 821 Crestwell Circle #150, Atlanta, Fulton County, Georgia 30331 and the improvements located thereon (the "subject property" or, alternatively, the "Property") on or about April 20, 2006 from Centex Homes, a Nevada General Partnership, having Centex Real Estate Corporation as its Managing General Partner, via Warranty Deed of same date; such Warranty Deed was filed and recorded on May 12, 2006 in Deed Book 42569, Pages 253-254, Fulton County, Georgia Records.[2]

Mr. Wane obtained a loan from SunTrust Mortgage to purchase the Property at issue in this lawsuit as an investment property on or about April 20, 2006 (the "Loan" or, alternatively, the "financing transaction").   To evidence this financing transaction, Ade Randall Thompson ("Mr. Thompson"), acting as attorney-in-fact for Mr. Wane,[3] executed a promissory note, in the

---

[1]   For purposes of the instant Rule 12(b)(6) Motion, well-pleaded factual allegations of Plaintiff's Complaint must be accepted as true.  FED. R. CIV. P. 12(b); *see also* United Techs. Corp. v. Mazer, 556 F.3d 1260, 1269 (11th Cir. 2009) (On a motion to dismiss for failure to state a claim, the Court accepts the truth of the facts alleged in the complaint).   Accordingly, SunTrust Mortgage and MERS, through counsel, summarize the allegations relevant to the Motion in this section.   However, the allegations, as summarized herein, are assumed to be true *solely* for purposes of this Motion, and their recitation herein should not be deemed to be an admission by either SunTrust Mortgage or MERS.

[2]   A court may take judicial notice of public records in considering a motion to dismiss.   *See* Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1280 (11th Cir. 1999), *rev'd and remanded on other grounds* Bryant v. Dupre, 252 F.3d 1161 (11th Cir. 2001).   *See also* Stahl v. U.S. Dep't of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss.").

[3]   A Specific Power of Attorney, executed by Mr. Wane in Pinellas County, Florida and dated April 13, 2006, appointing Ade Randall Thompson as attorney-in-fact for the purpose of executing the settlement documents at the Loan closing on the subject property conducted in Alpharetta, Georgia on April 20, 2006, was filed and recorded on May 12, 2006 in Deed Book 42569, Page 254, Fulton County, Georgia Records (the "Power of Attorney").   *Please see* n.3, *supra*.

4

amount of One Hundred Eight Thousand Two Hundred Dollars ($108,200.00) and dated April 20, 2006, in favor of SunTrust Mortgage (the "Note").   Mr. Thompson, acting as attorney-in-fact for Mr. Wane, executed and delivered a security deed in favor of MERS, acting solely in its capacity as nominee for the Lender [SunTrust Mortgage] and the Lender's successors and assigns in the financing transaction, also dated April 20, 2006, conveying the subject property as repayment of the Loan evidenced by the Note (the "Security Deed").   The Security Deed was filed and recorded on May 12, 2006 in Deed Book 42569, Pages 256-283, Fulton County, Georgia Records.   See Plaintiff's Complaint [Doc. No. 1] at ¶¶10-11.[4]   Mr. Thompson, acting as attorney-in-fact for Mr. Wane, also executed other various documents in connection with the Loan including, but not limited to, (i) a HUD-1 Settlement Statement (the "Settlement Statement"), (ii) a Truth-in-Lending Disclosure Statement (the "TILA Disclosure") for the Note providing, inter alia, an itemization of the amount financed, and (iii) an Initial Escrow Account Disclosure Statement (the "Escrow Account Disclosure").   Additionally, Mr. Wane had previously executed a RESPA Servicing Disclosure (the "RESPA Servicing Disclosure") at the time of his initial loan application.   True and correct copies (in redacted form) of the Warranty Deed, the Power of Attorney, the Note, the Security Deed, the Settlement Statement, the TILA Disclosure Statement, the Escrow Account Disclosure, and the RESPA

---

[4]   Plaintiff notes in his complaint that the financing transaction which forms the basis for the instant litigation actually consisted of *two (2) loans* totaling One Hundred Thirty-Five Thousand Two Hundred Fifty Dollars ($135,250.00): (i) a first mortgage in the amount of One Hundred Eight Thousand Two Hundred Dollars ($108,200.00) [the Loan, evidenced by the Note and the Security Deed]; and (ii) a second mortgage in the amount of Twenty-seven Thousand Fifty Dollars ($27,050.00), evidenced by a second lien promissory note executed by Mr. Thompson, acting as attorney-in-fact for Mr. Wane, in favor of SunTrust Mortgage and a second lien security deed, also dated April 20, 2006 and executed by Mr. Thompson, acting as attorney-in-fact for Mr. Wane, conveying the subject property to MERS, acting solely as nominee for SunTrust Mortgage, the Lender in the second financing

Servicing Disclosure are attached hereto as **Exhibit(s) 1, 2, 3, 4, 5, 6, 7 and 8**, respectively, and incorporated by reference herein.[5]

The violations alleged in Plaintiff's Complaint are not apparent on the face of the loan documents.

Mr. Wane subsequently defaulted on the debt by failing to make the payments required by the Note and Security Deed (*see* Complaint at ¶15), and he sought loss mitigation remedies for his default from SunTrust Mortgage.   Upon his request, SunTrust agreed, in or about October 2008, to enter into a loan modification agreement with Mr. Wane, whereby Mr. Wane would make reduced monthly payments at a fixed [six and one-half percent (6.5%)] interest rate on the remaining unpaid principal balance of the Loan(the "Loan Modification").   Mr. Wane failed to make the payment(s) under the terms of the Loan Modification and again defaulted on the Loan. Based upon the Plaintiff's continuing failure to make payments, and pursuant to its rights under

---

transaction, and the Lender's successors and assigns.  Id.   *Please see* n.3, *supra.*

    [5]   Throughout the Complaint, Plaintiff refers, albeit vaguely, to a "Loan" (*i.e.*, the Note), a "Mortgage", the Security Deed(s), and a TILA Disclosure.   Despite Plaintiff's failure to attach any of these documents to the Complaint, these documents may be considered on a motion to dismiss.  Bickley v. Caremark RX, Inc., 461 F.3d 1325, 1329 n.7 (11th Cir. 2006) (Where a claimant refers in his complaint to documents that are central to his claims, "'the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment'"), *quoting* Brooks v. Blue Cross & Blue Shield, Inc., 116 F.3d 1364, 1369 (11th Cir. 1997); Maxcell, Inc. v. Lucent Techs., Inc., 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered [on a motion to dismiss] if it is central to the plaintiff's claims and is undisputed in terms of authenticity.").   *See also* Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, [courts] may consider such a document provided it meets the centrality requirement.").   *The Court need not accept as true any of the Plaintiff's allegations that are contradicted by these documents.*  Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974); Rapoport v. Asia Elecs. Holding Co., 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000).   (Emphasis added).

the terms of the Security Deed, SunTrust Mortgage accelerated the debt and retained the law firm of Johnson & Freedman to institute foreclosure proceedings on the subject property.

Notwithstanding SunTrust Mortgage's loss mitigation efforts and in response to the initial foreclosure notice, Mr. Wane filed a lawsuit in the Superior Court of Fulton County, Georgia on or about February 5, 2010 seeking a "[T]emporary Restraining Order and/or Preliminary Injunction" against SunTrust Mortgage and MERS to prevent a scheduled foreclosure sale of the Property on March 2, 2010.[6]   Plaintiff's claims in the Fulton County Lawsuit are substantially similar to those raised in the case at bar and arise from the same set of facts.   *Please see* n.7, *supra*.   By Order entered March 16, 2010, Fulton County Superior Court Judge Henry M. Newkirk denied Mr. Wane's petition and dissolved the Lis Pendens recorded in connection with the Fulton County Lawsuit (the "March 16th Order").[7]

Following the dismissal of the Fulton County Lawsuit, SunTrust Mortgage authorized Johnson & Freedman to restart foreclosure proceedings on the subject property.[8]   *See* Complaint at ¶¶16, 19, 21 and 23; *see also* Exhibit(s) 6 and 8 to the Complaint.   Prommis Solutions, LLC, on behalf of Johnson & Freedman, provided the Plaintiff with notice(s) required by applicable state and federal guidelines.   Id.

---

[6]   *Amadou Wane v. SunTrust Mortgage, Inc. and Mortgage Electronic Registration Systems, Inc.*, Civ. Act. No. 2010CV181132 (Superior Court of Fulton Co., Ga.   March 16, 2010) (the "Fulton County Lawsuit").   A true and correct copy of the initial pleading filed in the Fulton County Lawsuit is attached hereto as **Appendix 1** and incorporated by reference herein.

[7]   A true and correct copy of the March 16th Order in the Fulton County Lawsuit is attached hereto as **Appendix 2** and incorporated by reference herein.

[8]   Plaintiff was due for the October 1, 2009 through April 1, 2011 payment(s) at the time the Loan was most recently referred for foreclosure.

Mr. Wane failed to cure the default prior to the scheduled foreclosure sale.   Johnson &

Freedman conducted a non-judicial foreclosure of the subject property on May 3, 2011 on the

steps of the Fulton County Courthouse during the legal hours of sale in accordance with Georgia

law, at which time, upon information and belief, Deutsche Bank National Trust Company bought

the Property (the "foreclosure sale").   Complaint at ¶23.

As noted above, Plaintiff filed this lawsuit on May 26, 2011, presumably in an effort to

stop eviction proceedings on the subject property. [Doc. No. 1].   SunTrust Mortgage was

purportedly served with Summons and a copy of the Complaint on or about June 1, 2011.   [Doc.

No. 6].   The Court's docket in this civil action does not reflect service of process on any other

named defendant.

Plaintiff has not paid, and currently is not paying, any amounts due under the Loan.

Plaintiff's interest in the subject property was extinguished by the foreclosure sale, and Plaintiff

is presently in adverse possession of the Property.

## ARGUMENT AND SUPPORTING AUTHORITY

In the case at bar, the Plaintiff has attempted to assert, in a wholly conclusory manner,

vague and unsubstantiated claims against the collective defendants for, *inter alia*, collusion,

fraud and "wrongful/unlawful foreclosure" and, specifically against SunTrust Mortgage, for

violations of TILA, RESPA and Reg. Z.[9]   Plaintiff asserts that, as a result of the alleged

---

[9]   SunTrust Mortgage and MERS, through counsel, respectfully ask the Court to take judicial notice of the initial pleading filed in this lawsuit, which is a "form" or "shotgun" pleading that seeks to attack the way the lending industry conducts business in general; it is not tailored in any way to reflect a grievance the Plaintiff allegedly has with SunTrust Mortgage, specifically, or with MERS.   This "pre-packaged" pleading, and others like it, create frivolous litigation and demonstrate a total disregard for the merits, or lack thereof, of any single litigant's particular claim(s).

violations, he has the right to rescind the subject transaction and retain the Property which is the subject of his complaint.   Complaint at, *inter alia*, ¶71 and ¶¶77- 85.   Plaintiff, who is appearing *pro se*, also seeks to recover actual and statutory damages, clear title in fee simple to the Property, punitive damages, and court costs and attorney's fees against the named defendants herein.   Id. at ¶¶121-124.   As shown below, the Plaintiff has failed to state a claim or cause of action against either SunTrust Mortgage or MERS upon which relief may be granted, nor has the Plaintiff pled any claim(s) with the specificity necessary to substantiate an award of damages in this action.   Accordingly, SunTrust Mortgage and MERS submit the Court should dismiss Plaintiff's Complaint against these named defendants with prejudice.

### A.    THE STANDARD FOR DISMISSAL.

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief can be granted if it appears that the plaintiff can prove no set of facts in support of the claim(s) entitling the plaintiff to relief.   Haines v. Kerner, 303 U.S. 519 (1975); Conley v. Gibson, 351 U.S. 41 (1957).   The Court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs."   Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).   Reasonable inferences are made in the plaintiff's favor, but "unwarranted deductions of fact in a complaint are not admitted as true."   Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (internal quotation marks omitted).   Similarly, the Court is not required to accept conclusory allegations and legal conclusions as true.   Id., *citing* Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 1951 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949, *quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).   Mere "labels and conclusions" are insufficient.   Twombly, 550 U.S. at 555.   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Iqbal, 129 S. Ct. at 1949 (*citing* Twombly, 550 U.S. at 556). This requires more that the "mere possibility the defendant acted unlawfully."   Sinaltrainal, 578 F.3d at 1261.   "The well-pled allegations must nudge the claim 'across the line from conceivable to plausible.'" Id. (*quoting* Twombly, 550 U.S. at 570).[10]   The complaint, then, must make direct factual allegations or suggest reasonable inferential allegations for each material element of some viable legal theory.   *See* Financial Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-1283 (11th Cir. 2007).

Complaints filed *pro se* are to be liberally construed and are "held to less stringent standards than formal pleadings drafted by lawyers."   Erickson v. Pardus, 551 U.S. 89, 94 (2007 (citations and internal quotation marks omitted).   Nevertheless, a *pro se* plaintiff must comply with the threshold requirements of the Federal Rules of Civil Procedure.   "Even though a *pro se* complaint should be construed liberally, a *pro se* complaint still must state a claim upon which the Court can grant relief."   Grigsby v. Thomas, 506 F. Supp. 2d 26, 28 (D.D.C. 2007).

---

[10]   Federal Rule of Civil Procedure 8 requires the plaintiff to state "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).   In Twombly, the Supreme Court recognized the liberal minimal standards imposed by Rule 8(a)(2) but also acknowledged that "[f]actual allegations

**B.      THE COMPLAINT FAILS TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED.**

SunTrust Mortgage and MERS, respectively, submit the Complaint in the case at bar, on its face, fails to state a claim upon which relief can be granted and, therefore, dismissal of Plaintiff's Complaint against these named defendants is both appropriate and warranted.

**1.      Plaintiff's Complaint is a Shotgun Pleading That the Court Should Dismiss.**

The Complaint in this case is a quintessential shotgun pleading, which the Eleventh Circuit has repeatedly admonished litigants for filing.   *See* <u>Davis v. Coca-Cola Bottling Co.</u>, 516 F.3d, 955, 979, n.54 (11th Cir. 2008).   The Eleventh Circuit has described a "typical shotgun complaint" as one that "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts ... contain irrelevant factual allegations and legal conclusions."   <u>Strategic Income Fund v. Spear, Leeds & Kellogg</u>, 305 F.3d 1293, 1295, n.9 (11th Cir. 2002 ).   *See* n.10, *supra*.   The defining characteristic of a shotgun complaint is that it fails "to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading."   <u>Beckwith v. BellSouth Telecomm., Inc.</u>, 146 F. App'x 368, 371 (11th Cir. 2005).

In this case, the Plaintiff has failed to state *any* claim or cause of action against MERS, other than to aver that:

> [N]either STM [SunTrust Mortgage] nor . . . MERS has ever had a financial stake (liability/interest) in the [financing] transaction, other than Plaintiff's signature on

---

must be enough to raise a right to relief above the speculative level ..."   <u>Twombly</u>, 550 U.S. at 555.

a "loan" that both STM and MERS had actual knowledge, would never be repaid, contrary to assurances from conspiring participants in this fraudulent scheme. [sic]

Complaint at ¶31. (Emphasis supplied). In fact, Plaintiff's Complaint contains no other reference to MERS whatsoever, other than to aver MERS is a named defendant and to allege this Court's "jurisdiction" over MERS. Id. at ¶3 and ¶¶5-9. Absent any reference or allegation pertaining to any act or failure to act by MERS, the Complaint in the case at bar certainly cannot give fair notice of the Plaintiff's claims against MERS sufficient to satisfy the pleading standards established by Rule 8, much less survive a motion to dismiss for failure to state a claim under Rule 12(b)(6). MERS, through counsel, contends the Complaint in this case is devoid of any facts or allegations specific to the role of MERS in the underlying action(s) giving rise to this litigation and, thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Twombly, 550 U.S. at 556, n.3.

Furthermore, the Plaintiff has not set forth in his complaint any specific factual allegation(s) with respect to alleged wrongdoing by SunTrust Mortgage, the Lender in the financing transaction, nor can any construction of Plaintiff's Complaint herein support a cause of action against SunTrust Mortgage. Rather, the Complaint is replete with inaccurate statements as to SunTrust's role in the subject financing transaction and the subsequent foreclosure of the subject property. In fact, the Plaintiff does not *specify* the basis for *any* claim against SunTrust Mortgage but, rather, relies on unsupported conclusory allegations of vicarious wrongdoing by the "collective defendants". See, generally, Complaint at pp. 5-8 ("Nature of the Case"), ¶¶25-38. Such allegations are unavailing and meaningless without corresponding facts that

12

support these grossly generalized conclusions. Even if the Complaint contains some scant factual allegations, which SunTrust Mortgage disputes and denies as stated, they are buried amidst these irrelevancies. Plaintiff's claims against SunTrust Mortgage in this litigation are frivolous and subject to dismissal as a matter of law. *See* Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001).

### 2. Plaintiff's Rescission Claim Fails as a Matter of Law.

Plaintiff purportedly argues in this action that he is entitled to rescind the subject financing transaction because of alleged TILA violations which occurred either prior to or at closing on the Loan. Plaintiff's argument assumes, however, his rescission attempt was both valid and timely. Plaintiff asserts in his complaint that he sent a *"Notice of Rescission to Goldman Sachs ..."* and to SunTrust Mortgage on March 15, 2010, *nearly four (4) years* after the closing on the mortgage loan which is the subject of this lawsuit. Complaint at ¶¶ 13-14; *see also* Exhibit(s) 2 and 3 to Complaint. (Emphasis in original). Plaintiff does not and, in fact, cannot point to any specific evidence to support his claim(s) of a TILA violation, however. If, as SunTrust Mortgage contends, no sufficient TILA violation occurred, Plaintiff's rescission attempt is invalid and, as such, any attempt by the Plaintiff to assert a claim of a vested interest in the subject property arising from that invalid rescission attempt is meaningless.

Moreover, Plaintiff's claims under TILA are statutorily time barred. Plaintiff closed the subject transaction on April 20, 2006. Plaintiff first asserted a claim for rescission on March 15, 2010, *nearly four (4) years* after the Loan closed. Plaintiff filed the instant lawsuit on May 26, 2011, *more than five (5) years* after he closed on the mortgage loan which is the subject of

his lawsuit.   The documentary evidence in this case reflects that the Loan was purchase money for an investment property.   As such, there was *never* a right to rescind, and the one-year TILA statute would apply.   15 U.S.C. § 1640(e).   Accordingly, any and all TILA claims asserted by the Plaintiff in the case at bar are statutorily time barred.

Furthermore, the remedy of rescission is unavailable to the Plaintiff due to his inability to complete the rescission process.[11]   There is little room for doubt in the case at bar that Plaintiff is unable to return the proceeds of the Loan at issue to SunTrust Mortgage.   In belatedly asking this Court to enforce his purported rescission claim, the Plaintiff is essentially asking this Court to reverse the foreclosure sale and award him a "free" house.   Given the Plaintiff's apparent inability to tender back the proceeds from the Loan in the case before this Court, the dispute over whether a violation occurred, which SunTrust Mortgage specifically denies, becomes a futile and expensive exercise.   *See* <u>Yamamoto v. Bank of New York</u>, 329 F.3d 1167, 1173 (9th Cir. 2003).[12]   If the Plaintiff is unable to complete the rescission process, then rescission is not an available remedy as a matter of law.

---

[11]   Courts have long recognized that the right of rescission is granted by statute, but application of the remedy of rescission is governed by equitable principles.   <u>Brown v. Nat'l Permanent Fed. Sav. & Loan Ass'n</u>, 683 F.2d 444 (D.C. Cir. 1982).   The goal of a court in enforcing rescission should be to "most nearly put the [parties] in the position they were in before they entered the transaction."   <u>Rudisell v. Fifth Third Bank</u>, 622 F.2d 243, 254 (6th Cir. 1980).   Therefore, "when the rescission is attempted under circumstances which would deprive the lender of its legal due, the attempted rescission will not be judicially enforced unless it is so conditioned [that] the lender will be assured of receiving its legal due."   <u>Powers v. Sims and Levin</u>, 542 F.2d 1216, 1222 (4th Cir. 1976).

[12]   The court in <u>Yamamoto</u>, in considering a similar fact scenario, held that the court below acted within its discretion to require a tender before going through the empty and expensive exercise of a trial on the merits.

14

### 3.   Plaintiff's Complaint Fails to Satisfy the Standard of Federal Rule of Civil Procedure 9(b).

Because Plaintiff's allegations and demands for relief in this case are premised on fraud, they must meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standards.   *See, e.g.,* Brooks v. Blue Cross and Shield of Fla., 116 F.3d 1364, 1380-81 (11th Cir. 1997); Burnett v. Amrein, 243 Fed. Appx. 393 (10th Cir. 2007); Williams v. Unum Life Ins. Co., 2007 U.S. Dist. Lexis 63240 (N.D. Ga. 2007).[13]   Plaintiff's Complaint in this action wholly fails to satisfy the standard of Rule 9(b).   Although the Complaint is replete with conclusory allegations of fraud, it contains no specific or factual allegations against either SunTrust Mortgage or MERS concerning the allegedly fraudulent statements or representations made, the time and place of each such statement, the identify of the employee who allegedly made them, the content of the allegedly fraudulent statements, or what either SunTrust Mortgage or MERS obtained as a consequence of the alleged fraud.

### 4.   This Court Should Decline to Exercise Jurisdiction Over Plaintiff's State Law Claims.

While the Court need not reach the issue of res judicata to dismiss the Plaintiff's Complaint in the instant litigation, the doctrine of res judicata supports this Court exercising its

---

Yamamoto, 329 F.3d at 1173.

[13]   To satisfy Rule 9(b), a plaintiff must plead: (1) precisely what statements were made in what documents or what oral representations or omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the alleged fraud.   Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001).   Rule 9(b) serves an important purpose in fraud actions by alerting defendants to the "precise misconduct with which they are charged".   United States ex. Rel. Atkins v. McInteer, 470 F.3d 1350, 1359 (11th Cir. 2006).

discretion and declining to exercise jurisdiction over a state law claim.[14]   A comparison of the allegations contained in the Complaint in the case at bar and those contained in the petition filed in the Fulton County Lawsuit show that both the prior and pending litigation arise from the same nucleus of operative facts. Each litigated case asserts claims regarding the Plaintiff's purported rights to the Property at issue here.   Plaintiff may not re-litigate claims and issues which have already been adversely determined against him.

The term res judicata has been used to refer to both claim preclusion and to issue preclusion.   *See* Sewell v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 94 F.3d 1514 (11th Cir. 1996).   "[U]nder the federal full faith and credit statute, 28 U.S.C. § 1738, federal courts give preclusive effect to a state-court judgment whenever the courts of the state from which the judgment emerged would do the same." Richardson v. Miller, 101 F.3d 665, 668 (11th Cir. 1996).   In other words, this Court should determine preclusive the effect of the judgment rendered by a court of the State of Georgia by applying Georgia law.   Under Georgia law, scope and application of res judicata is governed by O.C.G.A. § 9-12-40, which provides:

> A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.

*See also* Akin v. Pafec Ltd., 991 F.2d 1550, 1556 (11th Cir. 1993).

---

[14]   SunTrust Mortgage and MERS, respectively, respectfully submit this Court, and all United States District Courts, lack jurisdiction to review, reverse or invalidate the judgment(s) of the state courts of the State of Georgia.   *See* Dale v. Moore, 121 F.3d 624, 626 (11th Cir. 1997).   Pursuant to the Rooker Feldman Doctrine, a United States District Court has no authority to review final judgments of a state court.   *See* Powell v. Powell, 80 F.3d 464, 466 (11th Cir. 1996).

"A party seeking to evoke res judicata on the basis of a prior judgment must establish three prerequisites: (1) identity of parties, (2) identity of the causes of action, and (3) adjudication on the merits by a court of competent jurisdiction in which the parties had a full and fair opportunity to litigate the relevant issues." Akin, 991 F.2d at 1556. "Generally, both the party invoking res judicata and the party against whom it is invoked, must have been represented in the prior action for res judicata to apply." Id. at 1559. An examination of the case at bar and the prior Fulton County Lawsuit shows this litigation satisfies all three (3) legs of the test.

The record shows that both SunTrust Mortgage and MERS were party(ies) to the Fulton County Lawsuit. Plaintiff has raised virtually identical causes of action in both of these lawsuits (i.e., that he is a victim of mortgage fraud, whose equity in the subject property has been stolen by the nefarious actions of the often unnamed defendants due to their respective inability to produce the original paper at issue in the financing transaction). Plaintiff has, in each of these lawsuits, claimed an interest in the Property and violations of his rights as a result of the respective "collective" defendants' efforts to foreclose upon and later evict the Plaintiff and/or his tenant(s)from the subject property. In each of these cases, Plaintiff requests that the respective court(s) find the Plaintiff is entitled to the Property, and that any action to foreclose on or evict the Plaintiff and/or his tenant(s) from the subject property be stayed, set aside or rescinded. Plaintiff may not re-litigate his claims having previously lost a virtually identical action in the Fulton County Superior Court. Please see Appendix 2.

The final leg of the test in Akin requires an adjudication on the merits by a court of competent jurisdiction in which the parties had a full and fair opportunity to litigate the relevant

17

issues.  The final Order entered by Judge Newkirk in the Fulton County Lawsuit constitutes such an adjudication on the merits by a court of competent jurisdiction.  Moreover, the Plaintiff may not raise any other claim arising out of the same course of events.  Under Georgia law, parties may not raise issues arising out of the same transaction which should have been pled in a prior suit.  <u>Akin</u>, 991 F.2d at 1557.

Plaintiff is continuing to plead the same set of facts and allege the same causes of action in this forum as were previously brought to a full and final adjudication in the prior Fulton County Lawsuit.  Plaintiff's claims were denied by a Georgia state court of competent jurisdiction.  SunTrust Mortgage and MERS respectfully submit that Plaintiff's latest attempt to re-adjudicate a prior judgment is barred, and Plaintiff's Complaint in the instant action must be dismissed.

## C.    VENUE IS IMPROPER.

In the alternative, SunTrust Mortgage and MERS, respectively, ask the Court to transfer this case to the Northern District of Georgia.  SunTrust and MERS submit that venue does not lie in this district based on the facts alleged on the face of the Complaint in this action.  As stated previously, Defendant Johnson & Freedman is a Georgia limited liability company, the real property at issue is located in Georgia, and all of the events giving rise to the claim(s) asserted in the Complaint occurred in Georgia.  This litigation should have – indeed, could only have – been brought in Georgia.

A civil action in which federal jurisdiction is not based solely on diversity of citizenship,[15] as in the case at bar, may be brought only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) *a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated,* or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).   (Emphasis added).   This action's only connection to this district is the Plaintiff's residence here, but that is not an element of Section 1391.   Where, as here, a case is brought in the wrong district, the Court may "transfer such case to any district . . . in which it could have been brought."   28 U.S.C. § 1406(a).

Accordingly, even if this Court finds that the Plaintiff has stated a valid claim, it should nevertheless dismiss this case for improper venue or, alternatively, transfer  the case to the Northern District of Georgia.

## CONCLUSION

SunTrust Mortgage and MERS, through counsel, urge this honorable Court to dismiss Plaintiff's Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6), as well as the Court's inherent power to decline supplemental jurisdiction as provided in 28 U.S.C. § 1367. As discussed in detail, *supra.*, a review of the Complaint in this litigation shows that absolutely

---

[15]   The Court need not reach the issue of whether a federal question exists or whether federal jurisdiction is founded solely on diversity of citizenship, as the outcome would be the same regardless.   *See* 28 U.S.C. § 1391(a)(3).

no cognizable claim at law, or in equity, is raised therein.   To the extent the Plaintiff asserts continued "ownership" of the Property, SunTrust Mortgage contends any interest the Plaintiff may have held in the subject property was extinguished as a result of the foreclosure sale.   To the extent the Plaintiff asserts the foreclosure sale was conducted improperly, SunTrust Mortgage contends the foreclosure sale is valid.   Moreover, the Plaintiff has totally failed to plead any claim(s) with the specificity necessary to substantiate an award of damages against either SunTrust Mortgage or MERS in this action.

For all the foregoing reasons, SUNTRUST MORTGAGE, INC. and MERS respectfully request this Court grant their Motion to Dismiss and enter an Order dismissing all of the Plaintiff's claims against these named defendants in this civil action.   In the alternative, SunTrust Mortgage and MERS transfer this case to the Northern District of Georgia, Atlanta Division.

This 23rd day of June, 2011.

Respectfully submitted,

HILL WARD HENDERSON

/s/ Patrick M. Mosley
PATRICK M. MOSLEY
Florida Bar No. 0033735
3700 Bank of America Plaza
101 East Kennedy Boulevard
Tampa, Florida 33602
Tel:   (813) 221-3900
Fax: (813) 222-8507
Email: pmosley@hwhlaw.com

OF COUNSEL:

Monica K. Gilroy, Esq.
Tania T. Trumble, Esq.
Emily Hart Cobb, Esq.
DICKENSON GILROY LLC
3780 Mansell Road, Suite 140
Alpharetta, Georgia 30022
Tel:   (678) 280-1922
Fax: (678) 280-1923
Email: Monica.Gilroy@dickensongilroy.com
         Tania.Trumble@dickensongilroy.com
         EmilyHart.Cobb@dickensongilroy.com

**Attorneys for SunTrust Mortgage, Inc.
and MERS**

## CERTIFICATE OF SERVICE

I hereby certify that I have this date electronically filed the within and foregoing **SUNTRUST MORTGAGE, INC.'S and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT and Incorporated Memorandum of Law** using the CM/ECF system and I have served the Plaintiff, proceeding *pro se* in this matter, with a copy of this pleading by placing a true and correct copy of same in the United States Mail, with prepaid first-class postage affixed thereto, properly addressed as follows:

> Amadou Wane, *Pro Se*
> 13046 Race Track Road, #118
> Tampa, Florida 33626
> This 22nd day of June, 2011.

/s/ Patrick M. Mosley
PATRICK M. MOSLEY

2363762v1

# EXHIBIT 1

Valente & Associates, LLC
286 South Main Street, Suite 100
Alpharetta, GA 30004
Phone #770-576-2251
Fax #770-610-9167

Deed Book 42569 Pg   253
Filed and Recorded May-12-2006 03:22pm
2006-0144671
Real Estate Transfer Tax $136.10
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

File# 600623

STATE OF GEORGIA
COUNTY OF FULTON

## WARRANTY DEED

This Indenture made this 20th day of April, 2006 between

CENTEX HOMES, A NEVADA GENERAL PARTNERSHIP, HAVING CENTEX REAL
ESTATE CORPORATION, AS ITS MANAGING GENERAL PARTNER

of the County of Fulton and the State of Georgia, as party or parties of the first part, hereinafter called Grantor, and

AMADOU WANE

as party or parties of the second part, hereinafter called Grantee (the words "Grantor" and "Grantee" to include their
respective heirs, successors and assigns where the context requires or permits).

WITNESSETH that:  Grantor, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00)
the receipt, reasonableness and sufficiency of which is hereby acknowledged, in hand paid at or before the sealing and
delivery of these presents, has granted, bargained, sold, aliened, conveyed and confirmed and by these presents does grant,
bargain, sell, alien, convey and confirm unto the said Grantee:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 245 OF THE 14TH DISTRICT
OF FULTON COUNTY, GEORGIA BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: THAT
CERTAIN CONDOMINIUM UNIT BEING UNIT 150, BUILDING 26 OF THE CASCADES CONDOMINIUMS,
PHASE 1B, AND RIGHTS APPURTENANT THERETO AS DESCRIBED IN THAT CERTAIN DECLARATION
OF CONDOMINIUM FOR THE CASCADES CONDOMINIUM, A CONDOMINIUM, RECORDED OCTOBER
31, 2005 IN DEED BOOK 41237, PAGE 152, RECORDS OF FULTON COUNTY, GEORGIA; AND AS
DEPICTED BY THAT CERTAIN PLAT RECORDED IN CONDOMINIUM PLAT BOOK 17, PAGE 51, AND
FLOOR PLANS AT BOOK 33, PAGE 120, TOGETHER WITH SAID UNIT'S APPURTENANT PERCENTAGE
OF UNDIVIDED INTEREST IN THE COMMON ELEMENTS OF THE CASCADES CONDOMINIUM, A
CONDOMINIUM, AS PROVIDED BY SAID DECLARATION, WHICH DECLARATION, PLAT, PLANS AND
ALLIED INSTRUMENTS AND AMENDMENTS EXECUTED THERETO, ARE INCORPORATED HEREIN BY
REFERENCE AS A PART OF THE DESCRIPTION OF THE PROPERTY DESCRIBED HEREBY.

THIS DEED IS SUBJECT TO ALL EASEMENTS, RESTRICTIONS AND COVENANTS OF RECORD IF ANY.

TO HAVE AND TO HOLD the said tract or parcel of land, with all and singular the rights, members and
appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoove
of the said Grantee forever in FEE SIMPLE.

AND THE SAID Grantor will warrant and forever defend the right and title to the above described property unto
the said Grantee against the claims of all persons whomsoever.

IN WITNESS WHEREOF, the Grantor has signed and sealed this deed, the day and year written above.

Signed, sealed and delivered in presence of:

CENTEX HOMES, A NEVADA GENERAL
PARTNERSHIP, HAVING CENTEX REAL ESTATE
CORPORATION, AS ITS MANAGING GENERAL
PARTNER

_____
Witness:

(SEAL)
BY: _____
ITS: _____

_____
NOTARY PUBLIC
My Commission expires:

(Notary Seal)

(V&A 7/04)

# EXHIBIT 2

Deed Book 42569 Pg 254
Filed and Recorded May-12-2006 03:22pm
2006-0144672
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

WHEN RECORDED RETURN TO:
VALENTE & ASSOCIATES, LLC
286 SOUTH MAIN STREET, SUITE #100
ALPHARETTA, GA 30004
(770) 576-2251 (770) 410-9167 FAX
RE: 60D623

STATE OF FLORIDA
COUNTY OF PINELLAS

### SPECIFIC POWER OF ATTORNEY

KNOWN ALL MEN BY THESE PRESENTS:

That I, AMADOU WANE, being desirous of arranging for the transaction of my business through an attorney in fact, have appointed, named and constituted, and by these presents do name, constitute and appoint, ADE RANDALL THOMPSON, as my true and lawful attorney in fact, for me, and in my name, place and stead.

(a)     to buy, mortgage (first or second), encumber, convey, rent, lease, pledge or otherwise acquire, by deed with or without warranty, bill of sale, contract or otherwise, to consummate a transaction for the Purchase of Real Property located at 821 CRESTWELL CIRCLE, ATLANTA, GEORGIA 30331 being more particularly described as on Exhibit "A" attached hereto and by this reference made a part hereof (hereinafter referred to as the "Property"), under such terms and conditions as (she/he) may deem satisfactory and further

(b)     to sign, endorse, receive, deposit or issue checks, notes, or other obligations or instruments, and to borrow money and secure same in any manner.

(c)     to do any other thing or perform any other act, not limited to the foregoing, which I might do in person, to consummate the transaction stated herein.

(d)     to execute all deeds, affidavits, closing statements and all other legal documents to acquire title and interest in the above described property according to and under the conditions of any "Contract to buy" entered into in my behalf as set forth hereinabove.

        This power of attorney shall remain effective until MAY 31, 2006; or until same is revoked by written instrument recorded in the office of the clerk of the Superior Court of FULTON County, in the State of Georgia. This Power of Attorney shall not be revoked or become ineffective in the event of my becoming incompetent after signing this Power of Attorney.

        IN WITNESS WHEREOF, I have hereunto set my hand and affixed by seal, this 13 day of APRIL, 2006.

        Signed, sealed and delivered in the presence of:

_____                    _____ (SEAL)
(Unofficial Witness)                                 AMADOU WANE

_____
(Notary Public)

CARMEL ELISE FEASTER
MY COMMISSION # DD 155694
EXPIRES: October 8, 2008
1-800-3-NOTARY  FL Notary Service & Bonding, Inc.

C:\Documents and Settings\amadou\My Documents\Real Estate\Properties Records\The Cascades\WANE.POA-Specific-SUNTRUST.doc

Deed Book 42569 Pg 255
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

# EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 245 OF THE 14TH DISTRICT OF FULTON COUNTY, GEORGIA BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: THAT CERTAIN CONDOMINIUM UNIT BEING UNIT 150, BUILDING 26 OF THE CASCADES CONDOMINIUMS, PHASE 1B, AND RIGHTS APPURTENANT THERETO AS DESCRIBED IN THAT CERTAIN DECLARATION OF CONDOMINIUM FOR THE CASCADES CONDOMINIUM, A CONDOMINIUM, RECORDED OCTOBER 31, 2005 IN DEED BOOK 41237, PAGE 152, RECORDS OF FULTON COUNTY, GEORGIA; AND AS DEPICTED BY THAT CERTAIN PLAT RECORDED IN CONDOMINIUM PLAT BOOK 17, PAGE 51, AND FLOOR PLANS AT BOOK 33, PAGE 120, TOGETHER WITH SAID UNIT'S APPURTENANT PERCENTAGE OF UNDIVIDED INTEREST IN THE COMMON ELEMENTS OF THE CASCADES CONDOMINIUM, A CONDOMINIUM, AS PROVIDED BY SAID DECLARATION, WHICH DECLARATION, PLAT, PLANS AND ALLIED INSTRUMENTS AND AMENDMENTS EXECUTED THERETO, ARE INCORPORATED HEREIN BY REFERENCE AS A PART OF THE DESCRIPTION OF THE PROPERTY DESCRIBED HEREBY.

# EXHIBIT 3

Loan No.: 0144963063

# ADJUSTABLE RATE NOTE

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. INCREASES IN THE INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS.**

April 20, 2006      ALPHARETTA      Georgia
*[Date]*      *[City]*      *[State]*

821 CRESTWELL CIRCLE #150, ATLANTA, GA 30331
*[Property Address]*

**1.**   **BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $108,200.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is SUNTRUST MORTGAGE, INC..
I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.**   **INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 8.375%. The interest rate I will pay will change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.**   **PAYMENTS**

(Please check box for interest-only payments.)
☒ I will make a payment consisting only of the interest due on the unpaid principal balance of this Note beginning on the first day of June, 2006 and on the first day of each month thereafter until the first day of May, 2016. Thereafter, I will pay principal and interest by making a payment every month as provided below.

**(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the first day of each month beginning on June, 2016. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on May 1, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at P.O. BOX 79041, BALTIMORE, MD 21279-0041 or at a different place if required by the Note Holder.

---

*0144963063 008D 146

*AW/RT*

(B)  **Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. $755.15. This amount may change.
(C)  **Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4.    **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A)  **Change Dates**
The interest rate I will pay may change on the first day of May, 2011, and on that day every  12 month thereafter. Each date on which my interest rate could change is called a "Change Date."
(B)  **The Index**
Beginning with the first Change Date, my interest rate will be based on an index. The "Index" is THE AVERAGE OF INTERBANK OFFERED RATES FOR ONE YEAR U.S. DOLLAR DENOMINATED DEPOSITS IN THE LONDON MARKET ("LIBOR"), AS PUBLISHED IN THE WALL STREET JOURNAL.
The most recent Index figure available as of the date ☒ 45 days ☐ 15 days ☐ first business day of the month immediately preceding the month in which the Change Date occurs ☐ before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.
(C)  **Calculation of Changes**
(Please check box for interest-only period.)
☒ The Interest-Only Period is the period from the date of this Note through May, 2016.  For the Interest-only Period, after calculating my new interest rate as provided below, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan.  The result of this calculation will be the new amount of my monthly payment.
The period after the Interest-Only Period is the Amortization Period.  For the Amortization Period, after calculating my new interest rate as provided below, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
Before each Change Date, the Note Holder will calculate my new interest rate by adding  Two and 250/1000ths percentage points (2.250%) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
(D)  **Limits on Interest Rate Changes**
(Please check appropriate boxes.)
☐  (1)  _____

☐  (2)  There will be no maximum limit on interest rate changes.

☒  (3)  My interest rate will never be greater than 13.375%.

☒  (4)  My interest rate will never be less than 2.250%.

*0 1 4 4 9 5 3 0 6 3 + 0 0 9 0 + 2 + 3

*AW/RT*

☐ (5) The interest rate I am required to pay at the first Change Date will not be greater than _____ % or less than _____ %.

☐ (6) My interest rate will never be increased or decreased on any single Change Date by more than _____ percentage points from the rate of interest I have been paying for the preceding period.

☒ (7) The interest rate I am required to pay at the first Change Date will not be greater than 13.375% or less than 3.375%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than 2.000 percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 13.375%.

(E)   **Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)   **Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.     **BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of my monthly payment, effective with my first monthly payment after the partial Prepayment, will automatically change to reflect the principal reduction resulting from the partial Prepayment, and this new monthly payment will continue until the next Change Date. If the partial Prepayment is made during the period when my monthly payment consists of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6.     **LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: ( a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.     **BORROWER'S FAILURE TO PAY AS REQUIRED**
(A) Late Charges for Overdue Payments



AW/RT

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Multistate Adjustable Rate Note - Single Family
Proprietary W02H

Page 4 of 5                                 27279341U 06/04

AW/RT

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Amadou Wane  By Ade Ronld Thompson
Attorney in Fact                          _____ (Seal)
                                                          -Borrower
_____ (Seal)
AMADOU WANE                -Borrower

_____ (Seal)        _____ (Seal)
                          -Borrower                       -Borrower

[Sign Original Only]

Multistate Adjustable Rate Note - Single Family                    27279MU 06/04
Proprietary W021t                    Page 5 of 5

# EXHIBIT 4

Deed Book 42569 Pg  256
Filed and Recorded May-12-2006 03:22pm
2006--0144673
Georgia Intangible Tax Paid $325.50
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

After Recording Return To:
Valente & Associates, LLC
286 South Main St., Suite 100
Alpharetta, GA 30004
770-576-2251

File #_____606623_____

After recording please return to:

SUNTRUST MORTGAGE, INC.
[Company Name]

RVW 5093
[Name of Natural Person]

1001 SEMMES AVENUE
[Street Address]

RICHMOND, VIRGINIA 23224
[City, State, Zip Code]

_____ [Space Above This Line For Recording Data] _____

Loan No.: 0144963063

# SECURITY DEED

MIN: 100010401449630637

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)    "Security Instrument" means this document, which is dated April 20, 2006, together with all Riders to this document.

(B)    "Borrower" is AMADOU WANE, INDIVIDUAL.   Borrower is the grantor under this Security Instrument.

(C)    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D)    "Lender" is SUNTRUST MORTGAGE, INC..  Lender is a corporation organized and existing under the laws of THE COMMONWEALTH OF VIRGINIA.  Lender's address is 901 SEMMES AVENUE, RICHMOND, VA 23224.

(E)    "Note" means the promissory note signed by Borrower and dated April 20, 2006. The Note states that Borrower owes Lender One Hundred Eight Thousand Two Hundred and 00/100ths Dollars (U.S. $108,200.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than May 1, 2036.

---

Georgia Security Deed-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT         MERS Modified Form 3011 01/01
—THE COMPLIANCE SOURCE, INC.—                                Page 1 of 14                                14301GA 08/00
www.compliancesource.com                                                                    ©2000, The Compliance Source, Inc.

*014 4963 063 * 00 A Q * 1 + 1 +    4

AW/ RT

Deed Book 42569 Pg 257

(F)     "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G)     "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H)     "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower *[check box as applicable]*:



☒ Adjustable Rate Rider      ☒ Condominium Rider           ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider  ☐ Biweekly Payment Rider
☒ 1-4 Family Rider           ☐ Revocable Trust Rider
☒ Other(s) *[specify]*       Waiver of Borrower's Rights
                             and Attorney's Affidavit

(I)     "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)     "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)     "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)     "Escrow Items" means those items that are described in Section 3.

(M)     "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)     "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)     "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)     "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

Georgia Security Deed–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      MERS Modified Form 3011 01/01
—THE COMPLIANCE SOURCE, INC.—                                                   1435IGA 08/00
www.compliancesource.com                      Page 2 of 14                       © 2000, The Compliance Source, Inc.

* 0 1 4 4 9 6 3 0 6 3 + 0 0 A 0 + 2 + 4

AW/RT

Deed Book 42569 Pg 258

(Q)   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the **COUNTY** of **FULTON**:

*[Type of Recording Jurisdiction]*        *[Name of Recording Jurisdiction]*

**SEE ATTACHED SCHEDULE A**

which currently has the address of 821 CRESTWELL CIRCLE #15D

*[Street]*

**ATLANTA,**           Georgia 30331                    ("Property Address"):

*[City]*                *[Zip Code]*

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

*AW/RT*

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's



*0 1 4 4 9 6 3 0 6 3 + 0 0 A D + 4 + 1*

AW/RT

obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.**   Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower:  (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

AW/RT

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund

AW/RT

of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Georgia Security Deed–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      MERS Modified Form 3011 01/01
—THE COMPLIANCE SOURCE, INC.—                                Page 7 of 14                                14001GA 08/00
www.compliancesource.com                                                             © 2000, The Compliance Source, Inc.

AW/RT

Deed Book 42569 Pg 263

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single

---

Georgia Security Deed-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**                MERS Modified Form 3011 01/01
—THE COMPLIANCE SOURCE, INC.—                                                                       14301GA 08/00
www.compliancesource.com                                   Page 8 of 14                           ©2000, The Compliance Source, Inc.



*01440306308*00A0*0*14

AW/RT

Deed Book 42569 Pg 264

disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12.  Borrower Not Released; Forbearance By Lender Not a Waiver.  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound.  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this

Georgia Security Deed–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    MERS Modified Form 3011 01/01<br>—THE COMPLIANCE SOURCE, INC.—                                          Page 9 of 14<br>www.compliancesource.com                                                                                                  ©2000, The Compliance Source, Inc.



* 0 1 4 4 9 8 3 0 6 3 * 0 0 A D * 9 *

AW/RT

Deed Book 42569 Pg 265

Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

AW/RT

Deed Book 42569 Pg 266

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this

Georgia Security Deed-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    MERS Modified Form 3011 01/01
—THE COMPLIANCE SOURCE, INC.—                                       Page 14 of 14                                   1405GA 08/00
www.compliancesource.com                                                                                © 2000, The Compliance Source, Inc.

A-W/RT

Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

AW/RT

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

25. **Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. **Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Georgia Security Deed-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3011 01/01
—THE COMPLIANCE SOURCE, INC.—                          Page 13 of 14                                                14301GA 08/00
www.compliancesource.com                                                                © 2000, The Compliance Source, Inc.

*AW / RT*

Deed Book 42569 Pg 269

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_Amadou Wane By Ade Randall Thompson_
_Attorney in Fact_

_____                                      (Seal)
Unofficial Witness                          AMADOU WANE                      -Borrower

_____                                      (Seal)
Notary Public                                                                 -Borrower
My Commission Expires: 7-23-09

County: FULTON                                                        (Seal)
Forsyth                                                                       -Borrower

                                                                      (Seal)
                                                                             -Borrower

Georgia Security Deed-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                MERS Modified Form 3011  01/01
—THE COMPLIANCE SOURCE, INC.—                              Page 14 of 14                                     14301GA  08/00
www.compliancesource.com                                                                    © 2000, The Compliance Source, Inc.

Deed Book 42569 Pg 270

Loan No.: 0144963063

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this 20th day of April, 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to SUNTRUST MORTGAGE, INC., a corporation (the "Lender") of the same date and covering the Property described in the Security Instrument and located at

821 CRESTWELL CIRCLE #150, ATLANTA, GA 30331
(Property Address)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. INCREASES IN THE INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 8.375% The Note provides for changes in the interest rate and the monthly payments, as follows:

4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the first day of May, 2011 and on that day every 12 month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is: THE AVERAGE OF INTERBANK OFFERED RATES FOR ONE YEAR U.S. DOLLAR DENOMINATED DEPOSITS IN THE LONDON MARKET ("LIBOR"), AS PUBLISHED IN THE WALL STREET JOURNAL.

The most recent Index figure available as of the date: ☒ 45 days ☐ 15 days ☐ first business day of the month immediately preceding the month in which the Change Date occurs ☐ before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

Multistate Adjustable Rate Rider - Single Family                                                    Rev. 03/04
Proprietary W0211                                                                              67644431U 08/02 Rev. 09/04
                                    Page 1 of 4

*0144963083*00C4+1*4

AW/RT

**(C) Calculation of Changes**

**(Please check box for interest-only period.)**
☒ The "Interest-Only Period" is the period from the date of this Note through  May, 2016.  For the Interest-Only Period, after calculating my new interest rate as provided below, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.

The period after the Interest-Only Period is the Amortization Period.  For the Amortization Period, after calculating, my new interest rate as provided below, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Before each Change Date, the Note Holder will calculate my new interest rate by adding  Two and 250/1000ths percentage points.  (2.250%) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
**(Please check appropriate boxes.)**

☐ (1)

☐ (2)  There will be no maximum limit on interest rate changes.

☒ (3)  My interest rate will never be greater than 13.375%.

☒ (4)  My interest rate will never be less than 2.250%.

☐ (5)  The interest rate I am required to pay at the first Change Date will not be greater than _____% or less than _____%.

— (6)  My interest rate will never be increased or decreased on any single Change Date by more than _____ percentage points from the rate of interest I have been paying for the preceding period.

☒ (7)  The interest rate I am required to pay the first Change Date will not be greater than 13.375% or less than 3.375%.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than 2.000 percentage points from the rate of interest I have been paying for the preceding 12 months.  My interest rate will never be greater than 13.375%.

*AW/RT*

Deed Book 42569 Pg 272

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.     TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of the title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

---
————————————[Signatures on Following Page]————————————

---

AW/RT

Deed Book 42569 Pg 273

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

Amadou Wane By Ade Rendol Thompson
Attorney in Fact
_____ (Seal)     _____ (Seal)
AMADOU WANE              -Borrower                             -Borrower

_____ (Seal)     _____ (Seal)
                        -Borrower                             -Borrower

Multistate Adjustable Rate Rider - Single Family                          Rev. 03-04
Proprietary W0211                    Page 4 of 4    67644MU 08/02 Rev. 09/04

*0144963003*00C4*4*4.

Deed Book 42569 Pg 274

Loan No.: 0144963063
MIN: 100010401449630637

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 20th day of April, 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to SUNTRUST MORTGAGE, INC. (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

#21 CRESTWELL CIRCLE #159, ATLANTA, GA 30331
*[Property Address]*

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

---

Multistate 1-4 Family Rider—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3170 01/01
—THE COMPLIANCE SOURCE, INC.—                                    14503MU 08/00 Rev. 12/04
www.compliancesource.com            Page 1 of 3                   ©2004, The Compliance Source, Inc.

*0 1 4 4 9 6 3 0 6 3 4 0 0 C 7 + 1 3*

AW/RT

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notices of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Multistate 1-4 Family Rider—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3170 01/01
—THE COMPLIANCE SOURCE, INC.—                                                  14503MU 08/00 Rev. 11/04
www.compliancesource.com                                                       ©2004, The Compliance Source, Inc.
Page 2 of 3



AW/RT



Deed Book 42569 Pg 276

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I.   CROSS-DEFAULT PROVISION.  Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

Amadou Wane By Ade Randall Thompson
Attorney in Act

_____ (Seal)                                        _____ (Seal)
AMADOU WANE                -Borrower                                                            -Borrower

_____ (Seal)                                        _____ (Seal)
                           -Borrower                                                            -Borrower

[Sign Original Only]

Multistate 1-4 Family Rider—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3170 01/01
—THE COMPLIANCE SOURCE, INC.—                   Page 3 of 3                           14503MU 08/00 Rev. 11/04
www.compliancesource.com                                                            ©2004, The Compliance Source, Inc.

Deed Book 42569 Pg 277

Loan No.: 0144963063
MIN: 100010401449630637

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 20th day of April, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to SUNTRUST MORTGAGE, INC. (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

921 CRESTWELL CIRCLE #150, ATLANTA, GA 30331
*[Property Address]*

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

CASCADES - THE COTTAGES
*[Name of Condominium Project]*

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code or regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

Multistate Condominium Rider — Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3140 01/01
—THE COMPLIANCE SOURCE, INC.—   Page 1 of 3   14502MU 08/00 Rev. 11/04
www.compliancesource.com   ©2004, The Compliance Source, Inc.

AW/RT

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of

Multistate Condominium Rider — Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Form 3140 01/01
14502MU 08/00 Rev. 11/04
©2004, The Compliance Source, Inc.

(Page 2 of 3)

AW/R

Deed Book 42569 Pg 279

Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

Amadou Wane By Ade Randall Thompson
Attorney in Fact

_____ (Seal)                         _____ (Seal)
AMADOU WANE                     -Borrower                                                            -Borrower


_____ (Seal)                         _____ (Seal)
                                -Borrower                                                            -Borrower

*[Sign Original Only]*

Multistate Condominium Rider — Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3140 01/01
—THE COMPLIANCE SOURCE, INC.—                                                          14502MU 08/00 Rev. 11/04
www.compliancesource.com                         Page 3 of 3                           ©2004, The Compliance Source, Inc.

Deed Book **42569** Pg **280**

Loan No.: 0144963063
MIN: 100010401449630637

# GEORGIA
# RIDER TO THE SECURITY DEED

This Rider is deemed to amend and supplement the Security Instrument given by Borrower that secures Borrower's Note to Lender and covering the property described in the Security Instrument.

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**Acknowledgement and Waiver of Borrower's Rights.** By execution of this paragraph, Borrower expressly: (1) acknowledges the **Right to Accelerate** the Debt and the **Power of Attorney** given herein to Lender to sell the property by nonjudicial foreclosure upon default by Borrower without any judicial hearing and without any notice other than such notice as is required to be given under the provisions hereof; (2) waives any and all rights which Borrower may have under the Fifth and Fourteenth Amendments to the Constitution of the United States, the various provisions of the Constitution for the several states, or any other applicable law to notice and to judicial hearing prior to the exercise by Lender of any right or remedy herein provided to Lender, except such notice as is specifically required to be provided hereof; (3) acknowledges that Borrower has read this Security Instrument and specifically this paragraph and any and all questions regarding the legal effect of the Security Instrument and its provisions have been explained fully to Borrower and Borrower has been afforded an opportunity to consult with counsel of Borrower's choice prior to executing this Security Instrument; (4) acknowledges that all waivers of the aforesaid rights of Borrower have been made knowingly, intentionally and willingly by Borrower as part of a bargained for loan transaction; and (5) agrees that the provisions hereof are incorporated into and made a part of the Security Instrument.

Georgia Rider to the Security Deed
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 1 of 2

#4501GA 02/00 Rev. 02/2000
©2000, The Compliance Source, Inc.



AW/RT

Deed Book 42569 Pg 281

READ AND AGREED BY BORROWER:

Amadou Wane by Anta Randall Thompson
Attorney in fact _____ (Seal)          _____ (Seal)
AMADOU WANE          -Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
          -Borrower                                 -Borrower

[Sign Original Only]

Georgia Rider to the Security Deed
—THE COMPLIANCE SOURCE, INC.—          Page 2 of 2          04150GA 07/00 Rev. 03/2000
www.compliancesource.com                              ©2000, The Compliance Source, Inc.



Deed Book 42569 Pg 282

# EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 245 OF THE 14TH DISTRICT OF FULTON COUNTY, GEORGIA BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: THAT CERTAIN CONDOMINIUM UNIT BEING UNIT 150, BUILDING 26 OF THE CASCADES CONDOMINIUMS, PHASE 1B, AND RIGHTS APPURTENANT THERETO AS DESCRIBED IN THAT CERTAIN DECLARATION OF CONDOMINIUM FOR THE CASCADES CONDOMINIUM, A CONDOMINIUM, RECORDED OCTOBER 31, 2005 IN DEED BOOK 41237, PAGE 152, RECORDS OF FULTON COUNTY, GEORGIA; AND AS DEPICTED BY THAT CERTAIN PLAT RECORDED IN CONDOMINIUM PLAT BOOK 17, PAGE 51, AND FLOOR PLANS AT BOOK 33, PAGE 120, TOGETHER WITH SAID UNIT'S APPURTENANT PERCENTAGE OF UNDIVIDED INTEREST IN THE COMMON ELEMENTS OF THE CASCADES CONDOMINIUM, A CONDOMINIUM, AS PROVIDED BY SAID DECLARATION, WHICH DECLARATION, PLAT, PLANS AND ALLIED INSTRUMENTS AND AMENDMENTS EXECUTED THERETO, ARE INCORPORATED HEREIN BY REFERENCE AS A PART OF THE DESCRIPTION OF THE PROPERTY DESCRIBED HEREBY.

AW/RT

Deed Book 42569 Pg 283
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

Loan #: 0144963063

RE:      Borrower(s):  AMADOU WANE

Lender:   SunTrust Mortgage, Inc.

Date:     April 20, 2006

## CONVENTIONAL WAIVER OF BORROWER'S RIGHTS

By execution of this paragraph, Borrower expressly:

(1) Acknowledges the right to accelerate the debt and the power of attorney given herein to Lender to sell the premises by nonjudicial foreclosure upon default by Borrower without any judicial hearing and without any notice other than such notice as is specifically required to be given under the provisions of said Deed to Secure Debt; (2) Waives any and all rights which Borrower may have under the Fifth and Fourteenth Amendments to the Constitution for the several States, or by reason of any other applicable law, to notice and to judicial hearing prior to the exercise by Lender of any right or remedy herein provided to Lender, except such notice as is specifically required to be provided in said Deed to Secure Debt; (3) Acknowledges that Borrower has read this Deed and any and all questions regarding the legal effect of said Deed and its provisions have been explained fully to Borrower and Borrower has been afforded an opportunity to consult with counsel of Borrower's choice prior to executing this Deed; (4) Acknowledges that all waivers of the aforesaid rights of Borrower have been made knowingly, intentionally and willingly by Borrower as part of a bargained for Loan Transaction; (5) Agrees that Borrower's rights to notice shall be limited to those rights to notice provided by this Deed and no other; (6) Agrees that the provisions hereof are incorporated into and made a part of the Security Deed.

Read and agreed to by Borrower:

Signed, sealed and delivered in the presence of:

_Amadou Wane By Atte Randall Thompson_
_Attorney in fact_ _____ (SEAL)
AMADOU WANE

_____ (SEAL)
Notary Public

_____ (SEAL)

_____ (SEAL)

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who having been first duly sworn according to law states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver of Borrower(s) of Borrower's rights. After said review with the explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

_____
NOTARY PUBLIC

_____
CLOSING ATTORNEY

# EXHIBIT 5

04-21-06A10:05 RCVD

4/20/06 1:07 PM

OMB No. 2502-0265

| A. U.S. Department of Housing and Development | B. Type of Loan |
|---|---|
| | 1. [ ] FHA  2. [ ] FMHA  3. [X] Conv. Unins. |
| | 4. [ ] VA  5. [ ] Conv. Ins. |
| | 6. File Number: 806023  7. Loan Number: 0144983063 |
| **Settlement Statement** | 8. Mortgage Ins. Case No. |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

D. Name of Borrower: AMADOU WANE, 14514 Canopy Drive, Tampa, FL 33626

E. Name of Seller: Contex Homes, 3780 Mansell Road, Suite 350, Alpharetta, GA 30022

F. Name of Lender: SunTrust Mortgage, Inc., 211 Perimeter Center Parkway, 4th Floor, Suite 400, Atlanta, GA 30346

G. Property Location: Lot 150, The Cottages @ Cascades

821 Crestwell Circle, #150, Atlanta, GA 30331

H. Settlement Agent: Valente & Associates, LLC (770) 576-2251   TIN: 04-3729704

Place of Settlement: 286 South Main Street, Suite 100, Alpharetta, GA 30004

I. Settlement Date: 4/20/2006   Proration Date: 4/20/2006

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross amount due from borrower:** | | **400. Gross amount due to seller:** | |
| 101. Contract sales price | 136,040.00 | 401. Contract sales price | 136,040.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 2,223.43 | 403. | |
| 104. | | 404. | |
| 105. HOA Working Capital Fund | 310.00 | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes  4/20/2006  to 1/1/2007 | 233.56 | 406. City/town taxes  4/20/2006  to 1/1/2007 | 233.56 |
| 107. County taxes  4/20/2006  to 1/1/2007 | 93.98 | 407. County taxes  4/20/2006  to 1/1/2007 | 93.98 |
| 108. Assessments | | 408. Assessments | |
| 109. Prorated HOA Dues  4/20/2006  to 6/1/2006 | 233.36 | 409. | |
| 110. | | 410. | |
| 111. 2006 Taxes Paid / Large Tract | | 411. 2006 Taxes Paid / Large Tract | |
| 112. | | 412. | |
| **120. Gross amount due from borrower:** | 139,142.33 | **420. Gross amount due to seller:** | 136,367.54 |
| **200. Amounts paid by or in behalf of borrower:** | | **500. Reductions in amount due to seller:** | |
| 201. Deposit or earnest money | 1,000.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 108,200.00 | 502. Settlement charges to seller (line 1400) | 7,767.30 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. 2nd Mortgage Proceeds | 26,087.15 | 509. Not Funding | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. Seller Paid HOA Prepaids | | 519. Seller Paid HOA Prepaids | |
| 220. Total paid by/for borrower: | 135,287.15 | 520. Total reduction in amount due seller: | 7,767.30 |
| **300. Cash at settlement from/to borrower:** | | **600. Cash at settlement to/from seller:** | |
| 301. Gross amount due from borrower (line 120) | 139,142.33 | 601. Gross amount due to seller (line 420) | 136,367.54 |
| 302. Less amount paid by/for borrower (line 220) | 135,287.15 | 602. Less total reduction in amount due seller (line 520) | 7,767.30 |
| **303. CASH [X]FROM [ ]TO BORROWER** | 3,855.18 | **603. CASH [ ]FROM [X]TO SELLER** | 128,600.24 |

SUBSTITUTE FORM 1099 SELLER STATEMENT - The information contained in Blocks E, G, H and I and on line 401 (or, if line 401 is asterisked, lines 403 and 404), 406, 407 and 408-412 (applicable part of buyer's real estate tax reportable to the IRS) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

SELLER INSTRUCTION - If this real estate was your principal residence, file form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of form 4797, Form 6252 and/or Schedule D (Form 1040).

You are required by law to provide Valente & Associates, LLC (770) 576-2251 with your correct taxpayer identification number. If you do not provide Valente & Associates, LLC (770) 576-2251 with your correct taxpayer identification number, you may be subject to civil or criminal penalties.

_Tamika Taylor_

Contex Homes

AW /BT

| | | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|
| 700. | Total sales/broker commission  based on : $136,040.00 @ 3.0000% = $4,081.20 | | | |
| 701. | Division of commission (line 700) as follows: | | | |
| 702. | $4,081.20  to  Century 21 | | | |
| 703. | Commission paid at settlement $4,081.20 | | | 4,081.20 |
| 704. | | | | |
| 800. | | | | |
| 801. | Loan origination fee | | | |
| 802. | Loan discount | | | |
| 803. | Appraisal fee  to  Timothy Harkrider  POCB 300.00 | | | 175.00 |
| 804. | Credit report  to  CTX Mortgage Company  POCB 15.00 | | | |
| 805. | Lender's inspection fee - FINAL  to  CTX Mortgage Company | | | 100.00 |
| 806. | Mortgage Insurance application fee | | | |
| 807. | Assumption fee | | | |
| 808. | Tax Service Fee  to  ValueTree R/E Services | | | 76.00 |
| 809. | GA Residential Mtg. Fee  to  GRMA | | | 6.50 |
| 810. | Flood Cert. Fee - Life of Loan  to  FDSI | | | 11.50 |
| 811. | Broker Fee  to  CTX Mortgage Company | | | 2,184.00 |
| 812. | Assignment Fee | | | |
| 813. | Application Fee | | | |
| 815. | Administration Fee  to  SunTrust Mortgage, Inc. | | | 750.00 |
| 816. | Commitment Fee | | | |
| 817. | Processing Fee  to  CTX Mortgage Company | | | 150.00 |
| 818. | Document Prep | | | |
| 819. | Underwriting Fee | | | |
| 820. | Administration Fee | | | |
| 821. | Courier/Delivery Fee  to  CTX Mortgage Company | | | 25.00 |
| 822. | Temporary Buydown | | | |
| 823. | Mtg Broker Fee  to  CTX Mortgage by SunTrust Mortgage  POCL 676.25 | | | |
| 900. | | | | |
| 901. | Interest from  4/20/2006  to  5/1/2006  at $24.8300/day  for 11 days. | | 273.13 | |
| 902. | Mortgage Insurance premium for | | | |
| 903. | Hazard Insurance premium for  1 yrs.  to  Centex Ins. Agency | | 317.00 | |
| 904. | | | | |
| 905. | | | | |
| 1000. | | | | |
| 1001. | Hazard Insurance | | | |
| 1002. | Mortgage Insurance | | | |
| 1003. | City property taxes  2 mo.@ $111.4100 per mo. | | 222.82 | |
| 1004. | County property taxes  2 mo.@ $44.0000 per mo. | | 88.00 | |
| 1005. | Annual assessments (maint.) | | | |
| 1006. | | | | |
| 1007. | | | | |
| 1008. | Aggregate Adjustment  to  SunTrust Mortgage, Inc. | | (155.41) | |
| 1009. | | | | |
| 1100. | | | | |
| 1101. | Settlement or closing fee | | | |
| 1102. | Abstract or title search  to  ATS/VA | | 160.00 | |
| 1103. | Title examination | | | |
| 1104. | Title insurance binder | | | |
| 1105. | Document preparation POA  to  Valente & Associates, LLC | | 100.00 | |
| 1106. | Notary fees | | | |
| 1107. | Attorney's fees to  Valente & Associates, LLC | | 450.00 | |
| | Includes above items no.: | | | |
| 1108. | Title insurance  to  Commerce Title c/o First American | | 285.39 | 40.00 |
| | Includes above items no.: | | | |
| 1109. | Lender's coverage  $108,200.00  $189.35 | | | |
| 1110. | Owner's coverage  $136,040.00  $136.04 | | | |
| 1111. | | | | |
| 1112. | Escrow Processing of EM  to  Valente & Associates, LLC | | 50.00 | |
| 1113. | | | | |
| 1200. | | | | |
| 1201. | Recording fees: | | | |
| 1202. | City/county tax/stamps: | | | |
| 1203. | State tax/stamps:  Mortgage $325.50 | | 325.50 | |
| 1204. | Transfer Tax  Deed $136.10 | | | 136.10 |
| 1205. | Prep-Record Mtg. Docs  to  Valente & Associates, LLC | | 85.00 | |
| 1206. | | | | |
| 1300. | | | | |
| 1301. | Survey | | | |
| 1302. | Pest Inspection | | | |
| 1303. | Tax Search  to  Sexton Real Estate/VA, LLC | | 12.00 | |
| 1304. | Prep/Delivery Mtg. Docs  to  Valente & Associates, LLC | | 60.00 | |
| 1305. | Plot Plan | | | |
| 1400. | Total settlement charges (entered on lines 103, section J and 502, section K) | | 2,223.43 | 7,767.80 |

## ACKNOWLEDGEMENT AND AGREEMENT

Purchaser/Borrower and Seller acknowledge that each has received, reviewed, and approved the entries appearing on the Settlement Statement and that each acknowledge receipt of a copy of same. Purchaser/Borrower acknowledges receipt of a copy of all applicable Truth In Lending Disclosures prior to closing. Purchaser/Borrower further acknowledges receipt and disbursement of the loan proceeds in full. Seller acknowledges receipt and payment in full of the proceeds due Seller from settlement amounts for any and all outstanding secured debts, taxes, liens and/or encumbrances. If any deficiency occurs, Borrower or Seller shall promptly remit same to the Settlement Agent or, alternatively, Settlement Agent shall be authorized to net same from any sums due Purchaser/Borrower or Seller from closing proceeds. Purchaser/Borrower and Seller acknowledge that all checks issued at closing are subject to the Lender providing "good funds", providing funding authorization, and issuing a funding number, if required, and all checks or drafts accepted by the Settlement Agent being honored by the respective institution upon which they are drawn. In the event that funds are withheld or withdrawn by the Lender for any reason, or in the event that any check or draft is dishonored, all parties shall immediately return all checks or negotiated funds to Settlement Agent. On a refinance, it is acknowledged that checks will not be released until Settlement Agent has received funds and funding authorization from Lender.

Purchaser/Borrower acknowledges that any sums paid outside of closing to any mortgage broker by any lender, whether disclosed as a yield spread premium, yield differential, broker fee, or otherwise, constitute compensation for services rendered by said mortgage broker for and on behalf of Purchaser/Borrower. Purchaser/Borrower further acknowledges that said premium, if any, was disclosed to Purchaser/Borrower prior to closing as part of said mortgage broker's overall compensation for services rendered.

The Proration of taxes and assessments may have been made based on estimated amounts prior to receipt of current actual bills. Purchaser and Seller agrees to adjust the prorations shown on the Settlement Statement between them when current actual bills are received. The payment of all outstanding and/or delinquent taxes, assessments, and homeowner's association fees or dues, if any, not paid at settlement are assumed by Purchaser/Borrower. Seller is, however, liable to Purchaser for his/her prorate share of the same. Upon notice from Purchaser/Borrower, Seller shall immediately remit any amounts owed to Purchaser/Borrower. Settlement Agent makes no representation to Purchaser/Borrower as to the status of any association fees or dues owed by Seller to any homeowner's association or organization or as to the status of any outstanding or past due water, sewerage, or other utility bill applicable to the property. The sole recourse of Purchaser/Borrower for any such assumption of liability is against the Seller.

Because your home has just been built, it is probable that the amount of taxes in your payment is not exact. This occurs because the tax assessment may not be based on the totally completed home. Therefore, it is likely that your monthly tax escrow payment will increase once the lender receives this years tax bill, remits payment for this years tax bill, and reanalyzes your escrow account. Depending upon your first payment due date, tax bill due date, and lender analysis of your escrow account, your escrow account may be negative after payment of this years tax bill.

The undersigned acknowledges that the Attorney represents the Lender. As such, there is no attorney/client relationship between the undersigned and the Attorney. The undersigned acknowledges that he or she is entitled to independent representation but has waived this right at closing. The undersigned freely and voluntarily releases Attorney from any and all liability and holds said Attorney harmless from any and all financial loss or other damage arising under or resulting from this transaction.

The undersigned borrower(s), for and in consideration of the approval, closing, and funding of their mortgage loan, hereby grant Valente & Associates, LLC limited power of attorney to correct and/or execute or initial all typographical errors discovered in any of the closing documentation required to be executed by the undersigned at settlement. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf.

Purchaser/Borrower hereby acknowledges that a real property tax return and application for homestead exemption is required by law and is to be filed with the county tax collector in which the property lies between January 1 and February 28 of the year immediately following settlement and that such filings are the sole responsibility of the Purchaser. Seller warrants that all required tax returns and applicable exemption applications have been filed for the current tax year. Purchaser/Borrower further acknowledges that owner's title insurance has been made available to Purchaser/Borrower by Settlement Agent.

As part of the consideration of this sale, the contract between the parties is by reference incorporated herein and made a part hereof. The terms and conditions therein shall survive closing and shall not merge upon delivery of the Warranty Deed.

CENTEX HOMES

By: _Kacia Zilleman_

Amadou Wane By Ade Gandohl Thompson
Attorney in Fact
Purchaser: AMADOU WANE

VALENTE & ASSOCIATES

Settlement Agent

RE: 600623

(V&A 7/04)

Loan No.: 0144963063

# ADDENDUM TO HUD-1 SETTLEMENT STATEMENT

### CERTIFICATION

I have carefully reviewed the Settlement Statement and to the best of my knowledge and belief, certify that it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the Settlement Statement.

_____ (Seller)

_____ (Seller)

_____ (Seller)

_____ (Seller)

*Amadou Wane By Ade Randall Thompson Attorney in Fact*

AMADOU WANE                (Borrower)

_____ (Borrower)

_____ (Borrower)

_____ (Borrower)

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were (i) received, or (ii) paid outside closing, and the funds received have been or will be disbursed by the undersigned as part of the settlement of this transaction. I further certify that I have obtained the above certifications, which were executed by the borrower(s) and seller(s) as indicated.

APR 2 0 2006

_____
Settlement Agent

_____
Date

Addendum to HUD-1 Settlement Statement (Multistate)

THE COMPLIANCE SOURCE, INC.
To Order Call: (972) 980-2178•Fax (972) 392-2891
www.compliancesource.com

(Page 1 of 1)

6603MU 08/99 Rev. 11/99

©1999, The Compliance Source, Inc.

# EXHIBIT 6

# TRUTH IN LENDING DISCLOSURE STATEMENT
## (RESPA Transactions)

CREDITOR: SUNTRUST MORTGAGE, INC.                          Loan No.: 0144963063
PROPERTY: 821 CRESTWELL CIRCLE #150, ATLANTA, GA 30331

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you | Amount Financed The amount of credit provided to you or on your behalf | Total of Payments The amount you will have paid after you have made all payments as scheduled | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ N/A |
|---|---|---|---|---|
| 7.975 % | $ 190,343.33 | $ 107,404.87 | $ 297,748.20 | $ N/A |

Your Monthly payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| 60 | 755.15 | 06/01/2006 | | | | | | |
| 60 | 687.52 | 06/01/2011 | | | | | | |
| 240 | 879.95 | 06/01/2016 | | | | | | |

**Construction Loan:** ☐ If checked, this loan provides for interest-only payments during the construction period. Beginning _____, you will make periodic interest-only payments during the construction period, followed by payments of principal and interest as scheduled above. ☐ Disclosures about the variable rate feature were provided to you earlier.

**Variable Rate:** ☒ If checked, this loan contains a variable rate feature. ☐ Disclosures about the variable rate feature were provided to you earlier about the variable rate feature are provided in the attached Variable Rate Disclosure Addendum. Current Index: 5.361%

**Assumption:** Someone buying your property ☒ cannot, unless otherwise provided by federal law, ☐ may, subject to conditions, be allowed to assume the remainder of the loan on the original terms.

**Security:** You are giving a security interest in: 821 CRESTWELL CIRCLE #150, ATLANTA, GA 30331
☒ the property being purchased ☐ your property.

**Late Charge:** If a payment is not received by the end of 15 days after the date it is due, you will be charged 5.000% of the overdue ☐ payment ☒ payment of principal and interest (or interest if your payment consists only of interest), but not less than U.S. $N/A and not more than U.S. $N/A.

**Prepayment:** If you pay your loan early you ☐ may ☒ will not have to pay a penalty. ☐ If you pay off an FHA insured loan, on a date other than the regular installment date, you may be assessed interest charges until the end of the month. You ☐ may be or ☒ will not be entitled to a refund of part of the finance charge.

**Deposit:** ☐ If checked, the annual percentage rate does not take into account your required deposit.

**Demand:** ☐ If checked, this loan has a demand feature.

See your contract documents for any additional information about non-payment, default, any required payment in full before the scheduled date, and any prepayment refunds.

4/17/2006 10:30:58 AM
Truth in Lending Disclosure Statement (RESPA Transactions) (Multistate)
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 1 of 2
01003MU 03/00 Rev. 01/06
©2006, The Compliance Source, Inc.

AW/RT

| | |
|---|---|
| **Property Insurance:** | Property insurance is required on this loan. Flood insurance may be required if the property is located in an area designated as an area having special flood hazards. You may obtain property insurance and, if required, flood insurance from anyone you want that is acceptable to Creditor. |
| **Credit Insurance:** | Credit life insurance and/or credit disability insurance: |

☒ is not required to obtain credit from Creditor and will not be provided by Creditor.

☐ is not required to obtain credit from Creditor, but will be provided by Creditor if you request the insurance and agree to pay the additional cost by signing below next to the coverage you want. No such insurance will be in force until the terms of your insurance contract have been fulfilled.

☐ is required to obtain credit from Creditor, but will not be provided by Creditor.

☐ is required to obtain credit from Creditor and will be provided by Creditor, as shown below.

| Type | Premium | Term | | Signature(s) |
|---|---|---|---|---|
| Single/Joint Credit Life | $N/A | N/A mos. | I/We want credit life insurance at the stated premium | _____ |
| Single/Joint Credit Disability | $N/A | N/A mos. | I/We want credit disability insurance at the stated premium | _____ |
| Single Credit Life and Disability | $N/A | N/A mos. | I/We want credit life and disability insurance at the stated premium | _____ |

Filing Fee: $ 0.00             (e)

"e" means estimate.

☐ all dates and numerical disclosures except the late payment disclosures are estimates.

The undersigned hereby acknowledge receipt of a completed copy of this Disclosure, a Good Faith Estimate of Settlement Charges, and if this loan has a Variable Rate feature, a copy of an Adjustable/Variable Rate Loan Program Disclosure along with a copy of The Consumer Handbook on Adjustable Rate Mortgages (Charm Booklet) on or before the date an application form was furnished or on or before the payment of a non-refundable fee, whichever is earlier, unless the application reached Creditor by telephone or by way of an intermediary agent or broker. In that event the disclosure was placed in the mail or delivered not later than three (3) business days after the Creditor received the application. The undersigned further acknowledge receipt of a copy of this Disclosure for keeping prior to consummation.

Amadou Wane  By Ade Randell Thompson
Attorney in Fact          April 20, 2006
_____          _____
AMADOU WANE                                    (Borrower)  (Date)
         (Borrower)  (Date)

_____          _____
         (Borrower)  (Date)                              (Borrower)  (Date)

**NOTE: Payments shown above do not include reserve deposits for taxes, property or flood insurance.**

4/17/2006 10:10:58 AM
Truth in Lending Disclosure Statement (RESPA Transactions) (Multistate)
—THE COMPLIANCE SOURCE, INC.—                              Page 2 of 2
www.compliancesource.com

03803I0U 07/00  Rev. 01/06
©2006, The Compliance Source, Inc.

Loan No.: 0144963063

# ANSWERS TO
# THE MOST FREQUENTLY ASKED
# TRUTH IN LENDING QUESTIONS

1. **What is a Truth In Lending Disclosure and why do I receive it?**
Your creditor is required by federal law to provide the information on this disclosure. The disclosure is designed to give you information about the costs of your loan so that you may compare these costs with those of other loan programs or lenders.

2. **What is the Annual Percentage Rate (APR) and why is it different from the initial interest rate on my loan?**
The APR is the cost of your credit expressed as an annual rate, and can be compared to the APR on other loan programs to give you a consistent means of comparing rates and programs. The APR is computed from the Amount Financed and is based on what your proposed payments will be on the actual loan amount credited to you at settlement. In a $50,000 loan with $2,000 Prepaid Finance Charges, a 30 year term, and a fixed interest rate of 12%, the payments would be $514.31 (principal and interest). Since the APR is based on the Amount Financed ($48,000), while the payment is based on the actual loan amount given ($50,000), the APR (12.533%) is higher than the 12% interest rate.

3. **What is the Finance Charge?**
The Finance Charge is the cost of credit expressed in dollars. It is the total amount of interest calculated at the interest rate over the life of the loan, plus Prepaid Finance Charges and the total amount of any required mortgage insurance charged over the life of the loan.

4. **What is the Amount Financed?**
The Amount Financed is the loan amount applied for, minus the Prepaid Finance Charges. Prepaid Finance Charges include items paid at or before settlement, such as loan origination, commitment or discount fees ("points"), adjusted interest, and initial mortgage insurance premium. The Amount Financed is lower than the amount you applied for because it represents a NET figure. If you applied for $50,000 and the Prepaid Finance Charges total $2,000, the Amount Financed would be $48,000. However, if your loan is approved in the amount requested, you will receive credit for the full amount for which you applied. In this example, you would receive a $50,000, not a $48,000, loan.

5. **What is the Total of Payments?**
This figure represents the total amount you will have paid if you make the minimum required payments for the entire term of the loan. This includes principal, interest and mortgage insurance premiums, but does not include payments for real estate taxes or property insurance premiums.

6. **What if my Disclosure states that I will not be entitled to a refund of part of the finance charge? What does this mean?**
This means that you will be charged interest for the period of time in which you used the money loaned to you. Your prepaid finance charges are generally not refundable, nor is any interest which has already been paid.



*AW/RT*

# EXHIBIT 7

# INITIAL ESCROW ACCOUNT DISCLOSURE STATEMENT

MIN: 100010401449630637

Disclosure Date: April 20, 2006

| BORROWER(S) NAME AND ADDRESS: | LENDER/SERVICER NAME AND ADDRESS: |
|---|---|
| AMADOU WANE<br>821 CRESTWELL CIRCLE #150<br>ATLANTA, GA 30331 | SUNTRUST MORTGAGE, INC.<br>901 SEMMES AVENUE<br>RICHMOND, VA 23224 |
| LOAN NO.:<br>0144963063 | MORTGAGE INSURANCE/CASE NUMBER. |

Your first monthly payment is due June 1, 2006 and will be $ 910.56, of which $ 755.15 will be for principal and interest, and $ 155.41 will go into your escrow account.

This is an estimate of activity in your escrow account during the next 12 months based on payments anticipated to be made from your account.

| MONTH | PAYMENTS TO ESCROW ACCT. | PAYMENTS FROM ESCROW ACCT. | DESCRIPTION | ESCROW ACCT. BALANCE |
|---|---|---|---|---|
| | | | | $     1,398.77 |
| Opening Deposit: | | | | |
| Jun, 06 | 155.41 | 0.00 | | 1,554.18 |
| Jul, 06 | 155.41 | 0.00 | | 1,709.59 |
| Aug, 06 | 155.41 | 1,337.00 | CITY TAX | 528.00 |
| Sep, 06 | 155.41 | 0.00 | | 683.41 |
| Oct, 06 | 155.41 | 528.00 | CO. TAX | 310.82 |
| Nov, 06 | 155.41 | 0.00 | | 466.23 |
| Dec, 06 | 155.41 | 0.00 | | 621.64 |
| Jan, 07 | 155.41 | 0.00 | | 777.05 |
| Feb, 07 | 155.41 | 0.00 | | 932.46 |
| Mar, 07 | 155.41 | 0.00 | | 1,087.87 |
| Apr, 07 | 155.41 | 0.00 | | 1,243.28 |
| May, 07 | 155.41 | 0.00 | | 1,398.69 |

(Please keep this statement for comparison with the actual activity in your account at the end of the escrow accounting computation year.)

Cushion selected by servicer: $310.82 or 2 month(s)

By signing below, I/we acknowledge receipt of a copy of this Initial Escrow Account Disclosure Statement.

*Amadou Wane  By Ade Randall Thompson*
*Attorney in Fact*

APR 2 0 2006

| | | | | |
|---|---|---|---|---|
| Borrower AMADOU WANE | Date | | Borrower | Date |
| Borrower | Date | | Borrower | Date |

# EXHIBIT 8

# RESPA SERVICING DISCLOSURE

Lender:  CTX MORTGAGE COMPANY, L.L.C.
3760 MANSELL ROAD, SUITE 300
ALPHARETTA        GA      30022

121040266

**NOTICE TO FIRST LIEN MORTGAGE LOAN APPLICANTS: THE RIGHT TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED. FEDERAL LAW GIVES YOU CERTAIN RELATED RIGHTS. IF YOUR LOAN IS MADE, SAVE THIS STATEMENT WITH YOUR LOAN DOCUMENTS. SIGN THE ACKNOWLEDGEMENT AT THE END OF THIS STATEMENT ONLY IF YOU UNDERSTAND ITS CONTENTS.**

Because you are applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. Section 2601 et seq.) you have certain rights under that Federal law.

This statement tells you about those rights. It also tells you what the chances are that the servicing for this loan may be transferred to a different loan servicer. "Servicing" refers to collecting your principal, interest and escrow account payments, if any. If your loan servicer changes, there are certain procedures that must be followed. This statement generally explains these procedures.

## Transfer Practices and Requirements

If the servicing of your loan is assigned, sold, or transferred to a new servicer, you must be given written notice of that transfer. The present loan servicer must send you notice in writing of the assignment, sale or transfer of the servicing not less than 15 days before the effective date of the transfer. The new loan servicer must also send you notice within 15 days after the effective date of the transfer. The present servicer and the new servicer may combine this information in one notice, so long as the notice is sent to you 15 days before the effective date of transfer. The 15 day period is not applicable if a notice of prospective transfer is provided to you at settlement. The law allows a delay in the time (not more than 30 days after a transfer) for servicers to notify you, upon the occurrence of certain business emergencies.

Notices must contain certain information. They must contain the effective date of the transfer of servicing of your loan to the new servicer, and the name, address, and toll-free or collect call telephone number of the new servicer, and toll-free or collect call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions. During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

## Complaint Resolution

Section 6 of RESPA (12 U.S.C. Section 2605) gives you certain consumer rights, whether or not your loan servicing is transferred. If you send a "qualified written request" to your servicer, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and the information regarding your request. Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, or must provide you with a written clarification regarding any dispute. During this 60-Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

A Business Day is any day in which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

## Damages and Costs

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.

## Servicing Transfer Estimates

1. The following is the best estimate of what will happen to the servicing of your mortgage loan:

☐ We may assign, sell or transfer the servicing of your loan while the loan is outstanding. ☐ We are able to service your loan and we ☐ will ☐ will not ☐ haven't decided whether to service your loan.

**OR**

☒ We do not service mortgage loans. ☐ and we have not serviced loans in the past three years. ☐ We presently intend to assign, sell or transfer the servicing of your mortgage loan. You will be informed about your servicer.

☐ We assign, sell or transfer the servicing of some of our loans while the loan is outstanding depending on the type of loan and other factors. For the program you have applied for, we expect to:
☐ sell all of the mortgage servicing         ☐ retain all of the mortgage servicing
☐ assign, sell or transfer  100  % of the mortgage servicing

2. For all the first lien mortgage loans that we make in the 12-month period after your mortgage loan is funded , we estimate that the percentage of mortgage loans for which we will transfer servicing is between:

_____ [0 to 25%] or [NONE]      _____ 26 to 50%      _____ 51 to 75%      **X** [76 to 100%] or [ALL]

This estimate ☒ does ☐ does not include assignments, sales or transfers to affiliates or subsidiaries. This is only our best estimate and it is not binding. Business conditions or other circumstances may affect our future transferring decisions.

3. ☐ We have previously assigned, sold, or transferred the servicing of federally related mortgage loans.

**OR**

☒ This is our record of transferring the servicing of the first lien mortgage loans we have made in the past:

| Year | Percentage of Loans Transferred | (Rounded to nearest quartile - 0%, 25%, 50%, 75%, or 100%) |
|------|--------------------------------|------------------------------------------------------------|
| 2003 | 100                          %  | |
| 2004 | 100                          %  | |
| 2005 | 100                          %  | |

This information ☒ does ☐ does not include assignments, sales, or transfers to affiliates or subsidiaries.

03/30/2006                                            CTX MORTGAGE COMPANY, L.L.C.
Date                                                                    Present Servicer or Lender

## ACKNOWLEDGMENT OF MORTGAGE LOAN APPLICANT

I/We have read this disclosure form, and understand its contents, as evidenced by my/our signature(s) below. I/We understand that this acknowledgment is a required part of the mortgage loan application.

_____  4/02/06
Applicant  AMADOU WANE          Date

_____
Applicant          Date

_____
Applicant          Date

_____
Applicant          Date

552R (0506)      6/05
M552R (121305)



# APPENDIX 1

### SUPERIOR COURT OF FULTON COUNTY
### STATE OF GEORGIA

AMADOU WANE;

**Plaintiffs**

v

**SUNTRUST MORTGAGE INC,
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS INC;**

**Defendants**

**CIVIL ACTION**

**FILE NO:** _____

---

### VERIFIED EMERGENCY PETITION FOR TEMPORARY
### RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

COMES NOW, Plaintiff AMADOU WANE and files *Verified Emergency Petition for Temporary Restraining Order and/or Preliminary Injunction* pursuant to Uniform Superior Court Rules 6.7,[1] and O.C.G.A. §9-11-65(b) against the listed Defendants.

### PARTIES TO THE ACTION

1. Plaintiff AMADOU WANE, at all times relevant has resided at 14614 Canopy Dr., Tampa, Florida 33626, in Hillsborough County.

2. Plaintiff AMADOU WANE, at all times relevant has owned the subject property located at 821 Crestwell Circle #150, Atlanta, Georgia, 30331.

---

[1] U.S.C.R. Rule 6.7: "...judge may shorten or waive the time requirement applicable to emergency motions, ...The motion shall set forth in detail the necessity for such expedited procedure."

1

3.  Defendant Suntrust Mortgage Inc., is a corporation organized under the laws of the State of Virginia; and at all times relevant, have been located at 901 Semmes Ave., Richmond, Virginia 23224. Suntrust Mortgage can be properly served with process through their Registered Agent: Corporation Service Company Inc. at their office address: 40 Technology Pkwy South #300, Norcross, GA 30092, in Gwinnet County.

4.  Defendant Mortgage Electronic Recording Systems, Inc ("MERS"), is a corporation organized under the laws of the State of Delaware; and at all times relevant, have been located at 1818 Library Street, Suite 300, Reston, Virginia 20190. MERS can be properly served with process through their Registered Agent: The Corporation Trust Company at their office address: Corporation Trust Center 1209 Orange Street, Wilmington, DE 19801.

## BRIEF BACKGROUND

5.  Plaintiff executed two Security Deeds for the property at 821 Crestwell Circle #150, Atlanta, Georgia, 30331[2], using the property as collateral on or around April 20, 2006.

6.  The Crestwell property Deeds were duly recorded in the Official Record of Fulton County in Deed Book 42569, Page 256 and Book 42569, Page 284

7.  Defendants have executed a Notice of Default on November 02, 2009.

8.  Pursuant to the Real Estate Settlement and Procedures Act (RESPA), 12 U.S.C. § 2605(e), Plaintiff mailed to Suntrust Mortgage on November 23, 2009 a Qualified

---

[2] Referred to hereinafter as "The Crestwell property"

Written Request (QWR) via certified mail (Receipt #7009-0820-0002-3462-3453).

9.   Plaintiff received a letter from SunTrust Mortgage around December 20, 2009 stating that the mortgage is owned by Goldman Sacs SEC Wells Fargo (see Exhibit A).

10.   Upon information and belief, Defendants and/or its predecessor(s) in interest had unclean hands in their course of dealing with Plaintiff because of several facts alleged herein below.

11.   Upon information and belief, Defendants and/or Defendant and/or its predecessor(s) in interest violated various provisions of the Truth in Lending Act ("TILA"), which is codified at 15 U.S.C. section 1601 et seq. and Regulation Z section 226 et seq. by interalia:

a) failing to deliver to the Plaintiff two copies of notice of the right to rescind (with all of the pertinent statutory disclosures)

b) failing to properly and accurately disclose the "amount financed"

c) failing to clearly and accurately disclose the "finance charge"

d) failing to clearly and accurately disclose the "total of payments"

e) failing to clearly and accurately disclose the "annual percentage rate"

f) failing to clearly and accurately disclose the number, amounts and timing of payments scheduled to repay the obligation

g) failing to clearly and accurately itemize the amount financed.

12.   Upon information and belief, Defendant and/or its predecessor(s) in interest violated various provision of the Real Estate Settlement Procedure Act ("RESPA"), which is codified at 12 U.S.C. section 2601, et seq. by, interalia:

3

a) Failing to provide the Housing and Urban Development (HUD) special information booklet, a Mortgage Servicing Disclosure Statement and Good Faith Estimate of settlement/closing costs to Plaintiff at the time of the loan application or with three (3) days thereafter;

b) Failing to provide Plaintiff with an annual Escrow Disclosure Statement for each of year of the mortgage since its inception;

c) Giving or accepting fees, kickbacks and/or other things of value in exchange for referrals of settlement service business, and splitting fees and receiving unearned fees for services not actually performed;

d) Charging a fee at the time of the loan closing for the preparation of truth-in-lending, uniform settlement and escrow account statements.


13.  Upon information and belief, Plaintiff has made all payments required by law under the circumstances; however Defendants and/or its predecessor(s) in interest improperly applied such payments resulting in the fiction that Defendants were in default.

Plaintiff is entitled to a full accounting through the master transaction histories and general ledgers for the account since a dump or summary of said information cannot be relied upon to determine the rightful amounts owed.

Further, the principal balance claimed as owed is not owed and is the wrong amount; the loan has not been properly credited or amortized.

14.  In light of all of these allegations, and on the face of the purported loan documents, the terms and circumstances of the Note and Security Deeds were unconscionable when made and were unconscionably exercised; it is unconscionable to enforce the Security Deeds by foreclosure.


15.  Allowing the Sale under Power to be completed, would not only expose Plaintiff to potentially serious financial liability, but would also be a direct violation of The

Due Process Clause, and numerous Constitutional guarantees concerning property.

16. Due to fraud, Plaintiff revoked his power of attorney under the term of the Deed of Trust on January 06, 2010 and recorded in Deed Book 48727, Page 172 of Fulton County.

17. A notice of revocation of Power of Attorney was mailed to Defendant on January 07, 2010 via USPS Certified Mail #7009-0820-0002-3462-3484.

18. Defendant has scheduled a sale for the first Tuesday in March 2010 without a valid Power of Attorney.

19. On January 25, 2010 Plaintiff requested validation of the debt pursuant to the Fair Debt Collection Practice Act, 15 USC 1692g Sec.809 (b) via USPS Certified Mail #7009-0820-0002-3462-3576 (Exhibit B). Defendant has ignored Plaintiff request.

20. Defendants are not the holder of the promissory; therefore have no standing to foreclosure.

## MEMORANDUM OF LAW IN SUPPORT OF TRO and/or PRELIMINARY INJUNCTION

Plaintiff AMADOU WANE incorporates fully and by this specific reference the statements in paragraphs 1 through 20 of this Petition/Complaint as if stated fully herein.

"A motion for interlocutory injunction or a TRO is an extraordinary motion, which is time sensitive, unlike other motions, because it seeks to preserve the status quo until a full hearing can be held to avoid irreparable harm." Focus Entertainment International, Inc., v. Partridge Greene, Inc. (253 Ga. App. 121) (558 SE2d 440)

5

(2001).

The Focus Court went on to explain that foreclosure is one such instance which "injunction is appropriate" because "when an interest in land is threatened with harm", "such harm is deemed to be irreparable to the unique character of the property interest, i.e., money damages are not adequate compensation to protect the interest harmed." See the following:

> "(a) Land, under Georgia law, is deemed sufficiently unique that it is entitled to equitable remedies to protect such interest in land. Rife v. Corbett, 264 Ga. 871 (455 SE2d 581) (1995) (injunction to protect an easement); Benton v. Patel, 257 Ga. 669, 672 (1) (362 SE2d 217) (1987) (injunction to stop foreclosure); Black v. American Vending Co., 239 Ga. 632, 634 (2) (238 SE2d 420) (1977) ("the law regards as sufficiently unique that equity will enforce a contract for [land] sale or lease"); Clark v. Cagle, 141 Ga. 703, 705-706 (1) (82 SE 21) (1914) (specific performance of contract to sell land). Therefore, when an interest in land is threatened with harm, equitable injunctive relief is appropriate, because such harm is deemed to be irreparable to the unique character of the property interest, i.e., money damages are not adequate compensation to protect the interest harmed. See generally Central of Ga. R. Co. v. Americus Constr. Co., 133 Ga. 392, 398 (65 SE 855) (1909) (irreparable injury defined to enjoin a nuisance); see also Roth v. Connor, 235 Ga. App. 866, 868-869 (1) (510 SE2d 550) (1998) (property interests of grantor and others in restrictive covenants for their benefit)."

Plaintiff has made a showing that without an Emergency Order granting a Temporary Restraining Order or Preliminary Injunction, Plaintiff will be irreparably harmed.

In times O.C.G.A.. §9-11-65 allows the Court to grant such Orders without notice to opposition in certain circumstances.

> O.C.G.A. §9-11-65
> (b) Temporary restraining order; when granted without notice; duration; hearing; application to dissolve or modify.

· 6

"A temporary restraining order may be granted without written or oral notice to the adverse party or his attorney only if: (1) It clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition; and (2) ... certifies to the court, in writing, the efforts, if any, which have been made to give the notice and the reasons supporting the party's claim that notice should not be required."

## CONCLUSION AND PRAYER FOR RELIEF

Plaintiff, AMADOU WANE incorporates fully and by this specific reference the statements in paragraphs 1 through 20 and all paragraphs contained within Plaintiff's Memorandum of Law as if stated fully herein.

Plaintiff in this matter approached the Defendants in the proper manner as required by law in a good faith attempt to remedy what could result in the loss of Plaintiff's property through no fault of his own. The Defendants on the other hand, refused to adhere to the mandatory state and federal laws.

Plaintiff has shown that Defendants violated Plaintiff AMADOU WANE's rights under the Real Estate Settlement and Procedures Act , Fair Debt Collection Practices Act, Truth in Lending Act thereby entitling Plaintiff AMADOU WANE to all appropriate relief provided for by statute.

Plaintiff AMADOU WANE regrets the emergency nature of this petition and prays the Court GRANTS the following relief:

(a)   GRANT an Emergency Temporary Restraining Order and/or Preliminary Injunction to prevent the foreclosure of Plaintiff AMADOU WANE's properties.

7

(b)  COMPEL Production of the Original Promissory Note(s).

(c)  COMPEL proof of any assignments, lien or any other instrument that proves any claims by any alleged holders in due course.

(d)  COMPEL validation of the alleged Debt.

(e)  COMPEL disclosure of the true lender(s).

(f)  GRANT Plaintiff AMADOU WANE all court costs and court related fees.

(g)  GRANT Plaintiff AMADOU WANE any and all other and/or further relief allowed by law and/or which this Court deems just and proper.

Respectfully submitted this 4th day of February, 2010.

By: _____
AMADOU WANE
13046 Race Track Rd #118
Tampa, FL 33626

8

## VERIFICATION

I, Plaintiff AMADOU WANE, having been duly sworn, under penalty of perjury, deposes and says that I am over the age of eighteen (18) and mentally competent to testify in this matter. My person and my property are in danger of immediate and irreparable injury, and loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition; and I hereby Certify, that the facts set forth regarding all matters stated in the above paragraphs are true and correct, therefore since this is an Emergency Petition further notice should not be required. I have read the foregoing pleading, the facts stated therein are from first hand knowledge and are true and correct to the best of my knowledge and belief.

This 4th day of February, 2010

AMADOU WANE

Subscribed and sworn to before me,
this 4th day of February, 2010.

Seal

Notary Public
My Commission Expires: 3/24/13

Notary Public, State Of Florida
JONATHAN RULLY
My Commission DD873949
Expires 03/24/2013

9



**SunTrust Mortgage, Inc.**
Post Office Box 26149
Richmond, VA 23260-6149
Toll Free 1.800.634.7928
www.suntrustmortgage.com

December 16, 2009

Amadou Wane
13046 Race Track Road #118
Tampa, FL 33626

Re: SunTrust Mortgage Loan Numbers 0144963063 and 0144963071

Dear Mr. Wane:

We are in receipt of your correspondence dated November 22, 2009. While your correspondence identifies your request as one that is to be treated as a Qualified Written Request (QWR), SunTrust Mortgage, Inc. did not receive this correspondence through the appropriate mailing address for QWR's, so it does not qualify for such treatment for this reason. The correct address is provided to you every month on back of your billing statements.

As a courtesy, I have enclosed the Note, Security Instrument and a 36-month payment history for the above reference loan. Several other documents you requested were provided to you at the time of closing. Additional document copies (Settlement Statement, Appraisal, etc.) are available for a fee of $5.00 per document. A copy of the Title Policy is available for a $10.00 fee.

On loan number 0144963063 the investor of your loan is Goldman Sacs SEC Wells Fargo. The mailing address is P.O. Box 10335, Des Moines, IA 50306-0335.

The investor for loan number 0144963071 is SunTrust Mortgage, Inc. The mailing address is P.O. Box 26149, RVW 3003, Richmond Virginia 23260-6149.

You are currently due for the October 1, 2009 through December 1, 2009 payments for both of the above referenced accounts. You have an unpaid late fee in the amount of $36.78 and a Property inspection fee of $16.75 for loan number 0144963063. On loan number 0144963071 you have unpaid late fee of $8.75.

As you are aware, a QWR is only available for information relating to the servicing of a loan and does not require the disclosure of confidential, proprietary or unrelated information. While SunTrust Mortgage is pleased to work with you and to answer your questions, we are unaware of any requirement that we provide copies of some of the documents you are requesting — such as *all agreements, contracts and understandings with vendors that have been paid for any charge on my account from the inception of my loan to the present date.* However, if you would kindly provide the authority for this document request, we will gladly respond as necessary to comply with any and all applicable statutory or regulatory provisions you cite.

EXHIBIT A

Amadou Wane
December 16, 2009
Page 2 of 2

All of the loan terms originally agreed to in the transaction documents you signed remain valid and enforceable throughout the life of the loan and are in no way compromised, altered or amended by your sending the above-referenced correspondence. Thus, it is your responsibility to make timely payments until you have paid all of the principal and interest and any other charges that may be owed under these documents.

Should you have any questions or need further assistance, please contact our Client Services Department at 1-800-634-7928, Monday through Friday, 8:00 a.m. to 8:00 p.m., or Saturday, 9:00 a.m. to 3:00 p.m. Eastern Standard Time.

Sincerely,

Wanda Hudson

Wanda Hudson
Executive Services
SunTrust Mortgage, Inc.

Enclosures

eso\wkh

EXHIBIT A

AMADOU WANE
13046 Race Track Rd #118
Tampa, FL 33626

JOHNSON & FREEDMAN LLC
1587 Northeast Expressway
Atlanta, GA 30329

Date: 01/25/2010

SENT VIA REGISTER MAIL # 7009-0820-0002-3462-3576
RETURNED RECEIPT REQUESTED

Re:     Lender Loan #:        3063
        File #:               11702708/ FT3
        Property Address:     821 Crestwell Circle #150
                              Atlanta, GA 30331

To Whom It May Concern:

This letter is being sent to you in response to a notice sent to me on January 22, 2010. Be advised that pursuant to the Fair Debt Collection Practices Act, 15 USC 1692g Sec. 809 (b) your claim is disputed and validation is requested. Your client is not the holder of the Promissory Note.

I respectfully request that your office provide me with evidence that I have any legal obligation to pay this alleged debt.

Please provide me with the following:

1. Copy front and back of the original Promissory Note.
2. Identify the current holder of the Promissory Note and Security Deed.
3. Location of the original Promissory Note.
4. The date that the current holder acquired the Note and from whom it was acquired from.

As this time I will also inform you that I have revoked my power of attorney as permitted by law. A copy was sent to you via certified mail with returned receipt on January 21, 2010. Any attempt to foreclose using revoked power of attorney will be fraud and reported to the proper authority as well as Georgia Bar.

I am also requesting that no telephone contact be made by your office to my home, cell phone, or to my place of employment. If your office attempt telephone communication with me, including but not limited to computer generated calls and calls or correspondence sent to or with any third parties, it will be considered harassment and I shall seek legal remedy. All future communications with me MUST be done in writing and sent to the address noted in this letter by USPS.

Best Regards,

Amadou Wane

EXHIBIT B

# APPENDIX 2



FILED IN OFFICE

MAR 1 6 2010

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

## IN THE SUPERIOR COURT OF FULTON COUNTY

### STATE OF GEORGIA

AMADOU WANE,             :
                                 :

      Plaintiff,           :
                                 :   **CIVIL ACTION**

vs.                       :   **FILE NO.: 2010CV181132**
                                 :

SUNTRUST MORTGAGE INC.,   :
MORTGAGE ELECTRONIC       :
REGISTRATION SYSTEMS, INC.,  :
                                 :

      Defendants.         :

### AMENDED FINAL ORDER

The Final Order entered by the Court in the above-captioned action on February 25, 2010 is hereby superceded and amended as follows:

Plaintiff's Petition for Temporary Restraining Order and / or Preliminary Injunction having been heard and considered, the same is hereby **DENIED**.

The Lis Pendens filed by the Plaintiff in the above-captioned action on March 2, 2010 is hereby **DISSOLVED**.

The Clerk of the Superior Court of Fulton County is hereby **DIRECTED** to record this Amended Final Order in the real property records of Fulton County, Georgia and, further, to enter a marginal reference to this Amended Final Order upon the following instruments: (i) Warranty Deed from Centex Homes, a Nevada General Partnership, having Centex Real Estate Corporation as its managing general partner, to Amadou Wane dated April 20, 2006 and recorded May 12, 2006 in Deed Book 42569, Page 253, Fulton County Georgia Records; (ii) Security Deed from Amadou Wane to Mortgage Electronic Registration Systems, Inc. ("MERS"), acting solely as nominee for

Lender [SunTrust Mortgage, Inc.] and Lender's successors and assigns, dated April 20, 2006 and recorded May 12, 2006 in Deed Book 42569, Page 256, Fulton County, Georgia Records; (iii) Security Deed (Secondary Lien) from Amadou Wane to MERS, acting solely as nominee for Lender [SunTrust Mortgage, Inc.] and Lender's successors and assigns, dated April 20, 2006 and recorded May 12, 2006 in Deed Book 42569, Page 284, Fulton County, Georgia Records; (iv) Notice of Revocation of Power of Attorney of Amadou Wane dated January 6, 2010 and recorded January 19, 2010 in Deed Book 48727, Page 170, Fulton County, Georgia Records; and (v) Lis Pendens dated February 26, 2010 and recorded March 1, 2010 in Lien Book 1481, Page 174, Fulton County, Georgia Records.

SO ORDERED, this the ___16 Th___ day of March, 2010.

_____

HENRY M. NEWKIRK

JUDGE, FULTON COUNTY SUPERIOR COURT

2